### Walter Crane v. Edwin Reeder and another.

*Transfer of causes :    Writ of error :    Remedy.*  An order of the circuit upon a petition for the transfer of a cause pending therein to the federal court, granting the prayer of the petition, is held reviewable on writ of error.

*Jurisdiction :    Presumptions.*  Every reasonable intendment will be made in favor of a jurisdiction once regularly and fully vested; and a legislative enactment will not be construed to operate to oust such a jurisdiction, unless such an intent is clearly expressed.

*Transfer of causes :  Time of application :  Act of 1789 construed :  Ground of removal.*  The act of 1789 expressly confines the application to remove, to the time of the appearance by the defendant in the state court, and it does not warrant the transfer on an application made after several trials and judgments, and reversals thereof in the state courts.

That act does not make the danger of injustice from prejudice or local influence a cause or ground of removal.

*Transfer of causes :    Time of application :    Act of 1866 construed.*  The main purpose of the act of 1866 was to avoid the results of an interpretation of the prior act holding it inapplicable to cases wherein alien and non-resident citizen defendants were impleaded with citizens of the state where the suit was brought, and to remedy the mischief of the joinder of a citizen defendant for the mere purpose of precluding the right of removal, and to carry out the original policy of the prior act.

By this act the right of transfer is confined to defendants, and the only ground or cause of removal prescribed is the status of the particular defendant, and not the probability of injustice in the state court from local or judicial hostility or prejudice ; and the application must be made before the trial or final hearing.

In construing this act to determine when it requires the application to be made, the term *"trial"* is held to apply to cases proceeding after the course of the common law, and the term *"hearing"* to cases proceeding after the analogy of equity causes ; and an application in a case of the former class, made after three trials upon the merits, will not authorize the transfer.

*Act of 1867 construed :    Citizens :    Aliens.*  The act of 1867 does not apply to such a case as this, where the cause of removal is the alienage of the defendants, but is limited to citizens.

*Transfer of causes.*  The order of transfer granted in this case is held to have been unwarranted and erroneous.

*Heard January 7.    Decided January 21.*

Error to Wayne Circuit.

*William P. Wells* and *S. T. Douglass,* for plaintiff in error.

No counsel appeared for defendants in error.

GRAVES, CH. J.

This is a writ of error to the circuit court for the county of Wayne.

The action is an ejectment which the plaintiff commenced several years since in the court below, to recover certain premises situated in Wayne county in this state. The parties proceeded to join issue and thereupon a trial was had before a jury in the court below in November, 1869. A verdict was returned for the defendants, upon which judgment was given in the usual course. The plaintiff then removed the cause to this court by writ of error, and in July, 1870, we reversed the judgment of the circuit court, and remanded the case for a new trial. During that year the cause was a second time tried before a jury in the court below, and again the jury found for the defendants, and judgment was thereupon entered as before. The plaintiff sued out a second writ of error from this court, and in April, 1871, we reversed that judgment and remanded the cause for another trial. In November, 1871, a third trial was had before a jury in the circuit court, and again the defendants recovered and obtained judgment, and this judgment the plaintiff also removed here on writ of error, and the same was finally reversed by us in July, 1872, when we again remanded the cause for trial.

After this protracted litigation in the state courts, and these successive trials and judgments upon the merits, and when this court, pursuant to the regular and lawful requirements of parties, had passed upon every material question connected with the controversy which the great skill and fertility of resource of the gentlemen assisting the parties were able to suggest, and when the cause was standing for trial in the court below under our judgment and mandate, that court, upon the application of the defendants, deter-

mined to proceed no further in the cause, and decided that the action should be removed to the circuit court of the United States for the eastern district of Michigan.

On that determination and decision the plaintiff again brought error. At an early day in the term the defendants moved on several grounds to dismiss the writ, and this motion, upon argument, we denied.

When the case came on upon the merits we were assisted by the plaintiff's counsel, but the counsel for the defendants declined to argue, and made no attempt to sustain the action of the court below. If the point to be considered was more questionable than we think it is, we should feel more sensibly than we do now the want of that aid the counsel for the defendants is so able to afford.

The application upon which the circuit court acted and determined is as follows:

" STATE OF MICHIGAN:

*In the Circuit Court for the County of Wayne:*
WALTER CRANE, *Plaintiff,*
       *vs.*            No. 14194.
EDWIN REEDER and
ELIZA REEDER, *Defendants.*

*To the Circuit Court for the County of Wayne:*

"The petition of Edwin Reeder and Eliza Reeder, defendants in the above entitled cause, respectfully shows to this honorable court, that they are both aliens and subjects of the Queen of Great Britain and Ireland, and both of foreign birth, and neither of them ever naturalized under the laws of the United States; that the above entitled action was commenced in the circuit court for the county of Wayne, on the 22d of April, A. D. 1869, by Walter Crane, plaintiff, against said petitioners, as defendants, by a declaration filed in said cause, and a copy thereof served on said defendants; that said suit is now pending in the said circuit court for the county of Wayne, being a court in said state of Michigan; and in said suit there is a controversy between said Walter Crane, who was when said suit was brought, and

CRANE v. REEDER.

still is, a citizen of the state of Michigan, and these petitioners as defendants, who are aliens and subjects of the Queen of Great Britain and Ireland, and the matter in dispute exceeds the sum of five hundred dollars, exclusive of costs; that said suit has not yet reached its final hearing or trial; and your petitioners now here aver and state,—the said Edwin Reeder for himself, and the said Eliza Reeder for herself,—that they have reason to, and do believe, that from prejudice or local influence, they will not be able to obtain justice in said state court.

"These petitioners therefore pray for the removal of this cause for trial into the next circuit court of the United States, to be held in the district where said suit is pending, to wit: into the circuit court of the United States for the eastern district of Michigan.

"Your petitioners further pray that the court will accept the surety herewith offered by your petitioners, pursuant to the provisions of law, for your petitioners entering in the circuit court of the United States for the eastern district of Michigan, on the first day of its next session, copies of said process against them, and of all pleadings, depositions, testimony and other proceedings in said cause, and also for their there appearing in this action, as by the laws of the United States are required to be done upon the removal of a suit into the United States court.

"Your petitioners therefore pray that this court will proceed no further in this cause, but that it be removed as aforesaid.

"Your petitioners further pray that this court will grant to your petitioners such other or further or different relief as may be just and proper, and that this court will make its order according to the allegations and prayer of this petition, or such other or further order in the premises as may be just and right.

                                        EDWIN REEDER.
                                        ELIZA REEDER.
"D. B. & H. M. DUFFIELD, Attorneys for Petitioners."

The plaintiff maintains that in view of the actual status of this cause in the state court, and the scope and meaning of the acts of congress on the subject of removing cases from state to federal courts, there was no legal warrant or authority for the decision made by the court below in this instance, and that the determination so made is necessarily re-examinable here on writ of error, and that this court cannot decline such re-examination without relinquishing its constitutional jurisdiction and duty. In denying the motion of the defendants to dismiss we reached the conclusion that such a determination as was made by the circuit court was reviewable on writ of error, and that we were not at liberty to refuse to entertain the jurisdiction.

Coming to the merits, it is left us to inquire whether the cause in the posture in which it stood, and marked by the characteristics belonging to it, was open to the disposition made of it by the circuit court.

The very ample discussion which these federal transfer acts have received in a number of courts, has so fully explained and illustrated the subject, and has gone so far in elucidating the scope, object and sense of the acts, that any present attempt in exactly the same path of discussion can scarcely eventuate in more than a restatement of the precise views and reasonings already well announced. It is therefore unadvisable and unnecessary to go over the same identical ground, or even to reproduce the opinions alluded to. It is quite sufficient to cite the cases.—*Akerly v. Vilas, 24 Wis., 165 ; Home Life Ins. Co. v. Dunn, 20 Ohio St., 175 ; Bryant v. Rich., 106 Mass., 180 ; Adams Express Co. v. Trego, 35 Md., 47 ; Burson v. The National Park Bank of N. Y., 40 Ind., 174.*

If, after perusing these cases, we proceed to read the several acts of congress in question under their light and in that of the events which influenced congress, and reflect upon the status of this cause when the court decided upon the application made for a transfer, the objection taken by

the plaintiff to the course of the circuit court will appear
to be nearly if not quite unanswerable.    Still the question
is so vitally important that any additional suggestion pos-
sessing even the merit of being only pertinent may be
excused.    And as there are some considerations which bear
upon the matter that do not appear to have been noticed,
it is deemed admissible to glance at one or two of them in
connection with a few observations upon the form and
meaning of the acts of congress.

In dealing with statutes intended to affect or claimed to
affect the continuance of jurisdiction in courts of original
and general authority the law has always recognized a prin-
ciple of construction which served to favor the retention of
jurisdiction.    As long ago as Charles II., it was laid down
as something well-settled and understood, that the jurisdiction
of the King's bench could not be ousted without particular
words in acts of parliament (*per Kelynge, C. J.,* in *Smith
and others, Commissioners of Sewers, 1 Mod., 44*); and in
*Cates v. Knight, 3 T. R., 442,* it was declared that the
court could not be deprived of its jurisdiction but by express
words or by necessary implication, any more than an heir
at law of his inheritance.    The same view is repeated in
*Rex v. Moreley, 2 Burr., 1040,* in *Shipman v. Henbest, 4 T.
R., 109,* and in *Crisp v. Bunbury, 8 Bing., 394,* and in many
other books.    In *Ex parte Heath and others, 3 Hill, 42,* it
was said by the supreme court of New York that the lan-
guage of an act designed to divest that court of its juris-
diction over the proceedings of inferior tribunals must
express the intent with such clearness as to leave no room
for doubt.    Indeed the authorities are very numerous and
striking, that before it can be claimed that an act is to
have the effect to absolutely divest a jurisdiction which has
regularly and fully vested, the law in favor of it must be
clear and unambiguous.—*Parsons v. Bedford, 3 Pet., 440.*

Whatever presumptions are permitted are in favor of the
retention of the authority, are in favor of the usual and
ordinary course, as opposed to what is unusual and excep-

tional; and it is very natural and reasonable to suppose that the legislature, in so far as they should think it needful to authorize interruptions and the shiftings of jurisdiction, would express themselves with clearness and leave nothing for the play of doubt and uncertainty.

The adjudged cases which serve to illustrate this doctrine and explain its application are abundant. There are several relating to the recent stamp act which have a bearing on the point. It was held that notwithstanding the generality of the words, the acts were not intended to apply to the state courts.—*Clemens v. Conrad, 19 Mich., 170; Green v. Holway, 101 Mass., 243; Carpenter v. Snelling, 97 Mass., 452; Griffin v. Ranney, 35 Conn., 239; Haight v. Grist, 64 N. C., 739; People v. Gates, 43 N. Y., 40; Craig v. Dimock, 47 Ill., 308.*

There are also several decisions confining the early, and some of the late amendments of the constitution of the United States, notwithstanding the breadth of their language, and holding them inapplicable to the states; and these cases are not unworthy of attention in connection with this subject.—*Barron v. The City of Baltimore, 7 Pet., 243; Twitchell v. The Commonwealth, 7 Wall., 321; Bradwell v. The State, 16 Wall., 130; Slaughter-House Cases, ib., 36; Livingston's Lessee v. Moore, 7 Pet., 551; Fox v. Ohio, 5 How., 434.*

The authorities which in one form or another bear more or less upon and recognize or imply the validity and importance of the principle in question, are too great in number and various in character to be introduced into an opinion or even to be cited. And when we consider that the state courts are within its influence, and give attention to the relations subsisting between the tribunals of the state and Union, and also to the relations of the two political systems, we shall find abundant reason to favor the application of the principle in order to prevent conflict and confusion. We may now notice the terms of the acts of congress relating to the removal of causes.

The act of 1789 literally and expressly confines the application to remove, to the time of the appearance by the defendant in the state court. The right is also expressly given to alien defendants and citizen defendants residing in some state other than that in which the suit is commenced. The conditions upon which the exercise of the right is to depend are thus laid down, and they prescribe the lawful occasion and limits of the right. The application sanctioned by the court below was not warranted by the law of 1789. It was not made at the stage to which that law confines it. Neither is one of the causes or grounds mentioned in the application, namely, the danger of injustice in the state court, a cause or ground for removal under the law of 1789.

The main purpose of the law of 1866 appears to have been the prevention of a practice which took advantage of a construction of the act of 1789 and served in many cases to defeat the benign purpose of the law. It came to be held that alien and non-resident citizen defendants could not take steps to remove when impleaded with others who were citizens of the state in which the suit was brought; and on the footing of this interpretation plaintiffs were led to implead or join a resident citizen with no other real object than to preclude the right of removal. To remedy this mischief and carry out the original policy of the act of 1789, congress intervened in 1866 and passed the act of that year. By this law also the right to promote a transfer was confined to defendants, and the ground or cause prescribed was the same as in the act of 1789, namely, the status of the particular defendant, and not the probability of injustice in the state court as a consequence of local or judicial hostility or prejudice. It likewise expressly and absolutely required the application to be made before "*the trial*" or final hearing.

In this legislation touching the proceedings of courts we must presume that congress was acquainted with the course of judicial action and had knowledge of the practice

which had prevailed. We must also suppose that they understood the meaning of the words they chose to employ, as that meaning had become generally fixed and settled.— *Parsons v. Bedford, 3 Pet., 440 ; Robinson v. Campbell, 3 Wheat., 212 ; King v. Judd, 2 T. R., 255 ; Beaden v. King, 9 Hare, 499 ; Pollard v. Patterson's Admr., 3 Hen. & Mun., 67 ; Lowenberg v. The People, 27 N. Y., 336 ; Com. v. Churchill, 2 Met., 118 ; Merchants' Bank v. Cook, 4 Pick., 405 ; Snell v. Company, 24 Pick., 296 ; Thornly v. Fleetwood, Strange, 318, 377.*

The act was intended to provide for the removal of causes at law and in equity, and it is well known to every lawyer, and must have been understood in congress, that according to general usage by the bench and bar, the term *"trial"* is uniformly, though perhaps not universally applied to the actual litigation of the merits in an action at law, as contradistinguished from the debate on the merits in a case in equity, and that a *"hearing"* is a term more precisely applied to equity cases, and others savoring of civil-law forms, as contradistinguished from those proceedings which are either grounded on the common law, or are shaped by analogy to its forms and methods.—See *Parsons v. Bedford, before cited ; United States v. Wonson, 1 Gall., 4 ; United States v. Goodwin, 7 Cranch, 108.*

It is, then, reasonable to suppose, that in using the term *"trial,"* congress referred to proceedings of a common-law nature, and in using the term *"hearing,"* had in contemplation cases of equitable cognizance, and any others of a civil-law nature within the reason of the enactment, and that in using both terms they intended to mark and preserve the distinction which exists between them, and prescribe and confine their application to their respective subjects.

The term "trial" as used in the act of 1866 should therefore be held to apply to a case like the present, and the associated term "hearing" should be referred to proceedings of a different nature. Keeping this in view, and

recalling the circumstance that the act of 1866 required, the application to be made before "*the trial,*" tho conclusion follows that the case at bar was not within that law. "*The trial*" had certainly taken place, and a condition which was indispensable, in order to make the act attach, was impossible. Three trials upon the merits had occurred.

Some observations were made on the policy and occasion of the act of 1867 which are undoubtedly correct, but as in my judgment the terms of the law on settled principles of construction exclude the case before us, it is not considered necessary to look particularly at that subject.

The law of 1867, which is the last and remaining one providing for transferring causes, literally and expressly applies to citizens, and has no application whatever to cases where the ground of removal is the alienage of defendants. It contemplates on its face a distinct class of cases, a class of cases originating in the anomalous state of things produced by the civil war. It provides for the transfer of suits between citizens of different states where the abuse or denial of justice is apprehended in the state tribunal. This is all. If the act had been designed to meet the case of alien defendants they would have been expressly named. They were the special objects of the two former acts, and these acts were present to the attention of congress when the law of 1867 was passed. One of them is referred to in the title and in the body of the law. Still aliens are not mentioned at all. This silence manifests that congress did not intend to make any change concerning alien defendants. The act of 1867, then, afforded no foundation for the application of the defendants or the decision of the circuit court. The conditions to enable the act to attach had no existence.

But it may be said that this result may follow if these laws are taken severally and successively, and not follow if they are brought together and interwoven and blended, and that they are entitled to be fused and consolidated into one consistent whole.

CRANE v. REEDER.

I am unable to find in the object, occasion, substance or framework of these enactments, any ground to justify such judicial revision and moulding. On the contrary the apparent design of congress would seem to be incompatible with a reduction of these different laws into one which would give to an alien defendant the right to remove in the same cases in which the right is given to citizens.

All these laws of course relate to the same general subject, the transfer of actions from the state to the federal courts. In so far the object and design is common. But they contemplate and provide for different and distinct grounds on which the right to remove is made to depend, and no case is subject to removal which is not by its facts brought completely within some defined class. If it has in part the elements which assign it to one class and in part the elements which assign it to another, and still does not combine all the elements required by some one class, it is not removable. It wants the group of ingredients, the precise composite character predetermined by congress as indispensable. Not having this assemblage, this aggregate of qualities, the law cannot apply to it. It is quite unnecessary to extend this examination further.

The determination of the circuit court was erroneous and must be reversed, with costs.

CAMPBELL and COOLEY, JJ., concurred.

CHRISTIANCY, J., did not sit in this case.