PALEY v COCA COLA COMPANY

DECISION OF THE COURT

1. APPEAL AND ERROR—EQUALLY DIVIDED COURT.

Decision of the Court of Appeals that a class action can be maintained only in circuit court is affirmed by an equally divided court.

FOR AFFIRMANCE

T. M. KAVANAGH, C. J., AND T. G. KAVANAGH AND WILLIAMS, JJ.

2. ACTION—CLASS ACTIONS—EQUITY.

*Michigan in adopting the class action clearly recognized it as a well known equitable doctrine; the equitable lineage of the class action has been authoritatively recognized in Michigan without question.*

3. ACTION—CLASS ACTIONS—EQUITY—STATUTES—DISTRICT COURTS—JURISDICTION—INJUNCTION—DIVORCE.

*A class action is historically equitable in nature within the meaning of the statute which provides the district court shall not have jurisdiction in actions for injunctions, divorce or actions which are historically equitable in nature, except as otherwise provided by law (MCLA 600.8315).*

4. COURTS—CIRCUIT COURTS—JURISDICTION—CLASS ACTIONS—LEGISLATURE.

*The Michigan Supreme Court in making a determination whether the Legislature intended to divest the circuit court of its traditional jurisdiction over class actions has an invariable rule to resolve every doubt in favor of retention rather than divestiture of jurisdiction.*

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 902.
[2–5, 7–9, 11, 13, 14, 16] 1 Am Jur 2d, Actions §§ 4, 125.
[6] 50 Am Jur, Statutes § 363.
[10] 50 Am Jur, Statutes § 219.
[12] 20 Am Jur 2d, Courts §§ 84, 85.
[15] 20 Am Jur 2d, Courts §§ 10, 17.

5. ACTION—CLASS ACTIONS—SPURIOUS CLASS ACTIONS—CIRCUIT COURTS—DISTRICT COURTS—JURISDICTION—STATUTES—EQUITY—LEGISLATURE.

*The Legislature did not intend to expel the spurious class action from the family of class actions and eject it from its traditional circuit court home by a statute providing that "the district court shall not have jurisdiction in actions * * * which are historically equitable in nature, except as otherwise provided by law"; the Legislature had a comprehensive restriction in mind; it did not stop with "actions which are historically equitable" but went on to broaden its proscription by adding "in nature", not to recognize the impact of "in nature" would be to attribute to the Legislature an unnecessary and meaningless use of language (MCLA 600.8315).*

6. STATUTES—CONSTRUCTION.

*It is a hornbook rule that where two sections of the same law are in conflict they must be reconciled if possible.*

7. ACTION—CLASS ACTIONS—CIRCUIT COURTS—DISTRICT COURTS—JURISDICTION—STATUTES—EQUITY—AMOUNT IN CONTROVERSY.

*The section of the statute that provides "the district court shall not have jurisdiction in actions * * * which are historically equitable in nature" limits another section of that statute that provides "the district court shall have exclusive jurisdiction in civil actions when the amount in controversy does not exceed $3,000.00" and indicates a legislative intention not to divest the circuit courts of class action jurisdiction (MCLA 600.8301, 600.8315).*

8. ACTION—CLASS ACTIONS.

*The class action gives scattered individuals with a common problem an instrument to try and deal with their problem, it has been particularly helpful for one of today's most beleaguered and disaffected groups—the consumer.*

9. COURTS—CIRCUIT COURTS—JURISDICTION—CLASS ACTIONS—DISTRICT COURTS—AMOUNT IN CONTROVERSY—LEGISLATURE.

*The Legislature did not intend to divest the circuit courts of class actions and did intend to restrict them from the district courts without regard to the amount in controversy.*

FOR REVERSAL

T. E. BRENNAN, SWAINSON, and M. S. COLEMAN, JJ.

10. COURTS—CIRCUIT COURTS—DISTRICT COURTS—JURISDICTION—CONSTITUTIONAL LAW—LEGISLATURE—STATUTES.

*A section of an article of the Michigan Constitution provides that*

*the circuit court shall have original jurisdiction "in all matters not prohibited by law"; the quoted phrase means that the Legislature may limit by statute that constitutionally vested plenary jurisdiction of the circuit court and the Legislature did this by a statute defining the original jurisdiction of the circuit court and by a statute which provides that the district courts have exclusive jurisdiction in civil actions where the amount in controversy does not exceed $10,000 (Const 1963, art 6, § 13; MCLA 600.605, 600.8301).*

11. COURTS—COURT RULES—PROCEDURE—CLASS ACTIONS—CIRCUIT COURTS—JURISDICTION.

*Court rule, which provides the procedure in class action cases, does not create jurisdiction in the circuit courts; it only provides the rules of procedure if circuit court jurisdiction already exists (GCR 1963, 208.1)*

12. COURTS — COURT RULES — PROCEDURE — JURISDICTION — PARTIES' RIGHTS.

*Rules of procedure can neither expand nor enlarge jurisdiction nor change the substantive rights of the parties.*

13. ACTION—AGGREGATION OF CLAIMS—JURISDICTION—CLASS ACTIONS.

*Aggregation of claims will not be permitted as a mode of obtaining circuit court jurisdiction in class action cases.*

14. EQUITY—CLASS ACTIONS—CONSUMER PROTECTION—CIRCUIT COURTS.

*Class action suits such as consumer protection suits commonly present traditional forms of equitable claim which permits entry into the circuit courts and once properly within that domain, a class action will be appropriate.*

15. INJUNCTION—CIRCUIT COURTS—DISTRICT COURTS—JURISDICTION—EQUITY—STATUTES.

*The circuit court is the only court that has jurisdiction to grant injunctive relief; the terms of the statute providing for the jurisdiction of the district court do not deprive the circuit court of jurisdiction in cases involving equitable relief (MCLA 600.8301).*

16. ACTION—CLASS ACTIONS—SPURIOUS ACTIONS—JOINDER OF PARTIES—COURT RULES.

*Class actions are merely procedural devices to expedite proceedings in certain cases and the so-called spurious action is actually a form of permissive joinder of parties; it is not a separate*

*cause of action and the class action court rules do not create a
new cause of action (GCR 1963, 208.1).*

Appeal from Court of Appeals, Division 1, Levin,
P. J., and Danhof and O'Hara, JJ., reversing and
remanding Oakland, Robert L. Templin, J. Submit-
ted March 6, 1973. (No. 5 March Term 1973,
Docket No. 54,058.) Decided July 24, 1973. Rehear-
ing denied September 28, 1973.

39 Mich App 379 affirmed by an equally divided
Court.

Complaint by Lloyd S. Paley, for himself and as
a representative of a class, against Coca Cola
Company and Glendinning Companies, Inc. for
damages for unfair methods of competition, breach
of contract, and fraud. Action dismissed on defend-
ants' motions. Plaintiffs appealed to the Court of
Appeals. Reversed and remanded. Defendants ap-
peal. Affirmed by an equally divided Court.

*Richard D. Mintz (Melvin M. Belli,* of counsel),
for plaintiffs.

*Butzel, Long, Gust, Klien & VanZile* (by *George
E. Brand, Jr., Richard E. Rassel* and *David W.
Kendall),* for defendant Coca Cola Company.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by
*Anthony J. Sapienza* and *Thomas D. Sherman),* for
defendant Glendinning Companies, Inc.

Amicus Curiae: Metropolitan Detroit AFL-CIO
Council (by *Kratchman & Kratchman, P. C.* and
*Ronald J. Prebenda).*

Williams, J. *(to affirm).* Despite the millions of
dollars involved in this case and the general strug-
gle to guarantee to the people the right to bring

the potentially powerful consumer class action suit in the state's court best equipped with discovery, injunction and other powers, the legal issue in this case is narrow and relatively simple. The legal issue boils down to whether or not the Legislature in its wisdom divested the circuit courts of original jurisdiction in class action suits in setting up district court jurisdiction. With the aid of excellent briefs and arguments pro and con, this opinion concludes that the Legislature did not intend to divest the circuit courts of jurisdiction over class action suits whatever the amount in controversy.

## I—THE FACTS

Defendants Coca Cola and Glendinning created and conducted a nationwide contest called "Big Name Bingo". Cards were distributed with ten questions on each, relating to the achievements of some famous person. The answers were pictures of such famous persons and were to be found on Coca Cola and Tab bottle tops and can cartons. The game was to paste the proper picture over the answers. Plaintiffs allege the original rules indicated that there was only one right answer to each question. However, at the last minute and after most contestants had filed their answers, new rules were announced indicating that some questions required two answers. This prevented most of the 1,500,000 contestants from winning the $100 prize for correctly answering ten questions.

Plaintiff Paley filed a representative class action on behalf of himself and 1,500,000 other persons similarly situated, seeking damages totaling $900,-000,000 for unfair trade practices, breach of contract and fraudulent misrepresentation on November 19, 1970.

Similar class actions had been filed in Los An-

geles and the Federal district courts in northern California and Detroit. The California case is still pending, the California Federal case was dismissed and is on appeal, and the Detroit Federal case was dismissed and has not been appealed. There is a still pending Federal Trade Commission case against the same defendants on the same facts.

Defendant Coca Cola filed a motion to dismiss for lack of jurisdiction and defendant Glendinning filed a motion for summary and accelerated judgments. These motions were granted February 22, 1971. Plaintiffs appealed. The Court of Appeals vacated the circuit court judgment and remanded for further proceedings on March 23, 1972. 39 Mich App 379.

We granted leave to appeal June 22, 1972. 387 Mich 797 (1972).


## II—SOURCE OF JURISDICTION

The basic issue in this case is whether the circuit court or the district court has jurisdiction to try it. The answer to that question must be found in the subscribed constitutional and statutory provisions:

A. "The circuit court shall have original jurisdiction in all matters not prohibited by law * * * ."[1] Const 1963, art 6, § 13.

B. "Sec. 601. Circuit courts have the power and jurisdiction
   (1) possessed by courts of record at the common law, as altered by the constitution and laws of this state * * * ,[1] and

---

[1] Disposition of this case is made without examining whether the Supreme Court has power to alter the jurisdiction of courts. Parts omitted in these constitutional and statutory provisions include parts relating to such power.

(2) possessed by courts and judges in chancery in England on March 1, 1897, as altered by the constitution and laws of this state * * * " MCLA 600.601; MSA 27A.601.

C. "Sec. 605. Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." MCLA 600.605; MSA 27A.605.

D. "Sec. 8301. The district court shall have exclusive jurisdiction in civil actions when the amount in controversy does not exceed $3,000.00.[2] MCLA 600.8301; MSA 27A.8301.

E. "Sec. 8315. The district court shall not have jurisdiction in actions for injunction, divorce or actions which are historically equitable in nature, except as otherwise provided by law." MCLA 600.8315; MSA 27A.8315.

The most critical provisions are C, D and E. C (§ 605) provides the "[c]ircuit courts have original jurisdiction * * * except where exclusive jurisdiction is given * * * to some other court". D (§ 8301) appears to provide that "[t]he district court shall have exclusive jurisdiction in civil actions when the amount in controversy does not exceed $3,000.00". However, E (§ 8315) provides "[t]he district court shall not have jurisdiction in * * * actions which are historically equitable in nature * * * ".

If a class action is "historically equitable in nature" then we must see whether the combination of D (§ 8301) and E (§ 8315) divest the circuit court of jurisdiction.

### III—IS A CLASS ACTION HISTORICALLY EQUITABLE IN NATURE

In *American State Savings Bank, Trustee v*

---

[2] Amended to $10,000 by 1971 PA 148, § 1.

*American State Savings Bank,* 288 Mich 78, 84 (1939) before there was any court rule on class actions, we said:

"In *City of Detroit v. Railway,* 226 Mich. 354 [1924], the *class suit* doctrine was adopted by this court. In that case, where it appeared that an exigency existed requiring a change in the terms of a trust in which approximately 1,200 bondholders were involved, the court quoted with approval the following from the decree of the trial court:
   " 'It seems to be a *well known equitable* doctrine that virtual representation [etc.]' " (Emphasis added.)

This quotation shows that Michigan in adopting the class action clearly recognized it as a "well known equitable doctrine".

In *Detroit* we quoted from the quotation in *Supreme Tribe of Ben-Hur v Cauble,* 255 US 356; 41 S Ct 338; 65 L Ed 673 (1921) used in *Colorado & S R Co v Blair,* 214 NY 497; 108 NE 840 (1915) as follows:

   " 'Class suits were known before the adoption of our judicial system, and were in use in English chancery.' " (p 371.)

In *Pressley v Wayne Sheriff,* 30 Mich App 300, 318 (1971), my Brother LEVIN, then Judge LEVIN, quoted from *Montgomery Ward & Co, Inc v Langer,* 168 F2d 182, 187 (CA 8, 1948):

   " 'The class action was an invention of equity [citation omitted] * * * .' "

See also *Bond v Ann Arbor School District,* 18 Mich App 506, 514 (1969).[3]

---

[3] *See also* Simeone, *Procedural Problems of Class Suits,* 60 Mich L Rev 905, 906, 908 (1962); Sands, *Civil Procedure—Availability of Class Actions to Consumers for Fraudulent Misrepresentation by Seller,* 21 Buff L Rev 233, 234, 235 (1971); Kelven & Rosenfield, *The Contempo-*

In the Author's Comments to GCR 1963, 208, Honigman & Hawkins, Michigan Court Rules Annotated states:

"Class actions were established in Michigan equity practice prior to 1945 when former Rule 16 adopted, in substance, Federal Rule 23 * * * ." (Volume 1, p 601.)

The equitable lineage of the class action has been authoritatively recognized in this state without question.

Is a class action then "historically equitable in nature" within the meaning of § 8315. We so hold.

We recognize that defendants acknowledge the equitable genesis of class actions but argue that the spurious class action is the product of the marriage of an equitable procedure and an action at law. In another context it could well be profitable to try to determine whether this equitable-legal progeny partook more of the characteristics of one rather than the other parent. However, that is not our ultimate objective here. Our ultimate objective in this case is to determine whether the Legislature intended to divest the circuit court of its traditional jurisdiction over class actions.

In making such a determination it is our invariable rule, as we shall immediately develop, to resolve every doubt in favor of retention rather than divestiture of jurisdiction. On that ground alone we would be forced even with defendants' able and penetrating analysis to decide against divestiture.

But the Legislature itself in § 8315 has specially signalled its intention against divestiture of circuit court jurisdiction and in favor of limitation of

rary *Function of the Class Suit,* 8 U Chi L Rev 684, 707–708 (1941); Rosenberg, *Class Actions for Consumer Protection,* 7 Harv Civil Rights L Rev 601, 607 (1972).

district court jurisdiction in this area. Section 8315 reads:

"The district court shall not have jurisdiction in actions for injunctions, divorce or actions which are historically equitable *in nature,* except as otherwise provided by law." (Emphasis added.)

That the Legislature had a comprehensive restriction in mind is clear. It did not stop with "actions which are historically equitable" but went on to broaden its proscription to include "actions which are historically equitable *in nature".* Not to recognize the impact of *"in nature"* would be to attribute to the Legislature an unnecessary and meaningless use of language.

In short, we are compelled to conclude that the Legislature did not intend to expel the spurious class action from the family of class actions and eject it from its traditional circuit court home.

## IV—IS THE CIRCUIT COURT DIVESTED OF CLASS ACTIONS

A. *Rules of Interpretation*

This Court has spoken to the question of divestiture of jurisdiction on several occasions. In *Leo v Atlas Industries, Inc,* 370 Mich 400, 402 (1963) we stated:

"The divestiture of jurisdiction, however, is a serious matter and cannot be done except under clear mandate of law."

And in the case of *Crane v Reeder,* 28 Mich 527, 532–533 (1874) this particularly persuasive language was used by Chief Justice GRAVES:

"In dealing with statutes intended to affect or

claimed to affect the continuance of jurisdiction in courts of original and general authority [such as circuit court] the law has always recognized a principle of construction which served to favor the retention of jurisdiction. * * * [T]he language of an act designed to divest that court of its jurisdiction over the proceedings of inferior tribunals must express the intent with such clearness as to leave no room for doubt. Indeed the authorities are very numerous and striking, that before it can be claimed that an act is to have the effect to absolutely divest a jurisdiction which has regularly and fully vested, the law in favor of it must be clear and unambiguous. * * *

"Whatever presumptions are permitted are in favor of the retention of the authority, * * * ; and it is very natural and reasonable to suppose that the Legislature, in so far as they should think it needful to authorize interpretations and the shiftings of jurisdiction, would express themselves with clearness and leave nothing for the play of doubt and uncertainty."

See also *Wight v Warner,* 1 Doug 384, 386 (1844).

Along with the presumption against divestiture of jurisdiction from a court to a lower court is the hornbook rule that where two sections of the same law, in this case §§ 8301 and 8315 of 1968 PA 154 amending 1961 PA 236, the Revised Judicature Act, are in conflict they must be reconciled if possible.

Throughout the argument of this case it was implicitly or explicitly conceded that had an injunction been prayed for, there would be no question about circuit court jurisdiction. That would certainly seem to recognize that § 8315 was an explicit exception to the exclusive jurisdiction granted the district court by § 8301. But if the first part of § 8315, "[t]he district court shall not have jurisdiction in actions for injunction, divorce * * * " limits § 8301 then the last part " * * * or

actions which are historically equitable in nature"
must also.

We conclude therefore that the presumption
against divestiture of court jurisdiction plus the
limitation of § 8315 on § 8301 indicates a legisla-
tive intention not to divest the circuit courts of
class action jurisdiction.

As the Court of Appeals so aptly stated, this
conclusion squares with present practice:

"Furthermore, irrespective of the amount in contro-
versy, a cause sounding primarily in equity must be
brought in the circuit court. The district court has no
general equity jurisdiction. The district court of Michi-
gan is a court of extremely limited jurisdiction. It is
governed by its own separate rules molded by a careful
consideration of the types of litigation which its limited
jurisdiction is likely to attract. There is no provision for
class action proceedings in the district court rules. We
believe this is the result of deliberate choice rather
than oversight.

"The circuit court then is the only one in which a
class action can presently be maintained." 39 Mich App
379, 383–384 (1972).

## V—IS AGGREGATION NECESSARY FOR A JURISDICTIONAL MINIMUM

Our conclusions above that the circuit courts
have not been divested of class actions and the
district courts are prohibited from entertaining
them obviate the requirement of a minimum juris-
dictional amount in controversy, and consequently
the question of aggregation is moot.

## VI—POST SCRIPT

Finally a post script. As we indicated at the
beginning the legal issue was narrow and rela-

tively simple. It has been resolved and the case decided. A brief word now, however, about what is involved is in order.

We live in a world where too many individuals often find their environment confusing, if not hostile. They feel like a number or a bit in a massive impersonal computer. All around them they are confronted by giant powers, big government, big corporations, big unions. They feel they have no control over, or even voice in what goes on. The law also seems strange and unfriendly. For too many the law seems like part of the problem instead of part of the solution.

The class action certainly is not a solution to all things. But in some areas, at least, it is a breath of hope—a chance to cope. It gives scattered individuals with a common problem an instrument to try and deal with their problem.[4] It has been particularly helpful for one of today's most beleaguered and disaffected groups—the consumer.[5] It is a kind of better slingshot for the modern David to tackle Goliath with.

Whatever the merits of the instant case, this phase of it, consciously or unconsciously, involves as a side effect the possible debilitation and blunting of the instrument so useful to the consumer and other everyday, average citizens lost and bewildered in the jungle of giants. If the class action

---

[4] The class suit has been employed, for example, to secure civil rights (see *Brown v Board of Education,* 347 US 483; 74 S Ct 686; 98 L Ed 873 [1954]), to reapportion legislatures (see *Baker v Carr,* 369 US 186; 82 S Ct 691; 7 L Ed 2d 663 [1962]), and to challenge welfare eligibility rules (see *King v Smith,* 392 US 309; 88 S Ct 2128; 20 L Ed 2d 1118 [1968]).

[5] This procedure has recently become a device for consumer protection advocates with which to equalize the advantages held by the giant businesses in the commercial arena. For an exhaustive compilation and analysis of class action statutes in each state as well as the current most complete study of consumer class actions, *see* Starrs, *The Consumer Class Action—Part II: Considerations of Procedure,* 49 Bos U L Rev 407, 425 (1969).

is removed from the circuit court, where it is aided and protected by full discovery and all the considerable powers and concerns of equity and relegated to the district court with no discovery or equity power, it is like taking away David's slingshot and leaving him liable to be crushed by Goliath's power. The law then would seem a little less relevant and a little more unfriendly.

## VII—CONCLUSION[6]

As heretofore indicated we hold the Legislature did not intend to divest the circuit courts of class actions and did intend to restrict them from the district courts without regard to the amount in controversy.

The Court of Appeals is therefore affirmed except insofar as it indicates aggregation may be necessary. Costs to plaintiffs.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, J., concurred with WILLIAMS, J.

SWAINSON, J. *(for reversal).* This case is one of a series of lawsuits arising out of a nationwide game-contest called "Big Name Bingo". It ran from March 10, 1969 to May 31, 1969. Defendant Coca-Cola sponsored the contest and defendant Glendinning Companies acted as the promotional agent. The game consisted of game cards which contained ten questions. The questions consisted of a brief statement identifying the achievement of some famous person. The question was to be matched with a picture of the person. The pictures were impressed on the underside of Tab and Coca-Cola bottlecaps and can covers. The rules stated

---

[6] Justice LEVIN has authorized me to say that if he were participating he would sign this opinion.

that there might not be a correct answer for each question. The prize for successfully completing a card was $100. Plaintiffs asserted that defendants had acted fraudulently in not informing the public that some of the questions required two answers. Plaintiffs allege that as a result of this rule change only a few of the 1.5 million entrants were adjudged winners of the $100 prize. Plaintiff Paley first brought a suit in Federal district court against the same defendants. This was dismissed on November 17, 1970. *Paley v Coca-Cola Co and Glendinning Companies, Inc,* Civ No 35219 (ED Mich, 1970). Subsequent to the dismissal, on November 19, 1970, Paley filed a class action in Oakland County Circuit Court. An amended complaint was filed on December 14, 1970. Twenty-two additional plaintiffs from California, Massachusetts and the District of Columbia were included in the amended complaint. Five of these plaintiffs had filed a lawsuit in Federal court in California. This suit had likewise been dismissed, *Carlson v Coca-Cola Co and Glendinning Companies,* Civ No 701544 GSL (ND Cal, Oct 16, 1970), and is being appealed to the Ninth Circuit Court of Appeals. Other legal action has also arisen from this game.[1] In the complaint filed in Oakland Circuit Court, plaintiff Paley brought a class action on behalf of himself and 1,500,000 individuals who had entered the contest. It is conceded that the claim of Paley and each of the other 22 named plaintiffs is in the amount of $100. Plaintiff further conceded for

[1] On July 1, 1970, the Federal Trade Commission filed a proposed complaint against the defendants asserting that defendants had violated 66 Stat 632 (1952); 15 USCA 45(a)(1) in conducting "Big Name Bingo". A formal complaint was filed five months later. That proceeding is still pending before the FTC. In July, 1970, a class action was filed in the California Superior Court for the County of Los Angeles. *Keller v Coca Cola Company and Glendinning Companies,* File No. 980988. That action is still pending.

purposes of deciding Coca-Cola's motion to dismiss that the claims of the representative plaintiff and each member of the class be separate and distinct claims and that the claims were not equitable. Plaintiff in his complaint stated:

"(1) That this litigation is maintained by virtue of and under authority of Rule 208, GCR 1963."

Plaintiff alleged three separate grounds for relief. First, that the defendants employed false and deceptive advertising and that the actions of defendants constituted unfair methods of competition in violation of MCLA 445.801 *et seq.;* MSA 19.853(1) *et seq.* and MCLA 445.701 *et seq.;* MSA 28.31 *et seq.;* second, breach of contract; and third, fraud.

On December 30, 1970, defendant Coca-Cola filed a motion to dismiss for lack of jurisdiction. On January 15, 1971, defendant Glendinning Companies filed motions for summary judgment and accelerated judgment. On February 22, 1971, the trial court dismissed the action on the ground that it lacked jurisdiction. The Court of Appeals reversed holding that the individual plaintiffs could aggregate their claims to meet the jurisdictional requirement of circuit court. 39 Mich App 379. We granted leave to appeal. 387 Mich 797.

We agree with the Court of Appeals that this case involves a narrow and precise issue. As Judge O'Hara stated, 39 Mich App 380:

"In question form it is: whether or not multiple plaintiffs in a claimed class action may aggregate their individual and separate claims in order to satisfy the minimum jurisdictional amount necessary to maintain an original action in the circuit court?"

## I. JURISDICTIONAL REQUIREMENT

At the outset, we must distinguish between the power of our Court to control practice and procedure in the courts of this state, and the power of the Legislature to vest jurisdiction in the courts of this state. Const 1963, art 6, § 13 provides:

"The circuit court shall have original jurisdiction in all matters not prohibited by law; appellate jurisdiction from all inferior courts and tribunals except as otherwise provided by law; power to issue, hear and determine prerogative and remedial writs; supervisory and general control over inferior courts and tribunals within their respective jurisdictions in accordance with rules of the supreme court; and jurisdiction of other cases and matters as provided by rules of the supreme court."

The phrase "in all matters not prohibited by law" means that the Legislature may limit by statute that constitutionally vested plenary jurisdiction of the circuit court. Under MCLA 600.605; MSA 27A.605, the original jurisdiction of the circuit court is defined as follows:

"Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state."

The constitutionally vested plenary jurisdiction of the circuit court has been limited by the jurisdictional provision of the district court as found in MCLA 600.8301; MSA 27A.8301 which provides:

"The district court shall have exclusive jurisdiction in

civil actions when the amount in controversy does not exceed $10,000.00.''[2]

The rule making power of the Supreme Court is derived from Const 1963, art 6, § 5 which provides:

"The supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state. The distinctions between law and equity proceedings shall, as far as practicable, be abolished. The office of master in chancery is prohibited."

Pursuant to the grant of authority in the 1963 Constitution and its predecessor, Const 1908, art 7, § 5,[3] our Court has promulgated general court rules. GCR 1963, 208.1 provides the procedure in class action cases.[4] However, GCR 1963, 208.1 does not create jurisdiction in the circuit courts. It only provides the rules of procedure if circuit court jurisdiction already exists. Our Court has dealt with the distinction between rules of procedure and jurisdiction in numerous cases. In *Shannon v Ottawa Circuit Judge,* 245 Mich 220 (1928), our Court was faced with a local procedural rule which inhibited the making of contracts between attorneys and clients and substantially affected the chances of certain plaintiffs to successfully prosecute a lawsuit. This Court invalidated the local court rule and quoted from *Washington-Southern*

[2] At the time of the commencement of this case, the amount was $3,000.

[3] Const 1908, art 7, § 5 reads as follows:

"The supreme court shall by general rules establish, modify and amend the practice in such court and in all other courts of record, and simplify the same. The legislature shall, as far as practicable, abolish distinctions between law and equity proceedings. The office of master in chancery is prohibited."

[4] The predecessor of GCR 1963, 208.1 is Rule 16 which was adopted prior to 1945 and which basically copies Federal Rule 23.

*Nav Co v Steamboat Co,* 263 US 629, 635; 44 S Ct 220; 68 L Ed 480 (1924) where the Court stated:

" 'The function of rules of court is to regulate the practice of the court and facilitate the transaction of its business.
" 'A rule of court cannot enlarge or restrict jurisdiction, or abrogate or modify the substantive law.' "

245 Mich 223.

In *Ray Jewelry Co v Darling,* 251 Mich 157, 160 (1930), the Court stated:

"It may be conceded that the common pleas court was created in pursuance of legislation and derives all its power and authority from it. *It may not expand or contract, enlarge or diminish, the jurisdiction conferred upon it by rule or otherwise."* (Emphasis added.)

It is thus well settled that the jurisdictional requirements of MCLA 600.8301; MSA 27A.8301 and MCLA 600.605; MSA 27A.605 are dispositive of where the plaintiffs' action must be brought in this case.[5] GCR 1963, 208.1 does not control the jurisdictional issue in this case. If plaintiffs' action was properly brought in the circuit court, they can invoke GCR 1963, 208.1(3) and proceed as a class action. If the action was not properly brought in the circuit court, GCR 1963, 208.1(3) cannot leap the jurisdictional barrier and create circuit court jurisdiction where none existed. Thus, we are faced with the issue of whether the claims of each

---

[5] Other cases have reiterated the proposition that rules of procedure can neither expand nor enlarge jurisdiction nor change the substantive rights of the parties. See, for example, *Pear v Graham,* 258 Mich 161, 169 (1932) (Justice WIEST dissenting); *Millman Brothers, Inc v Detroit,* 2 Mich App 161, 166 (1966); 110 ALR 22, § 4d, pp 53–54; 158 ALR 705, § 4d, p 716; *The Steamer St. Lawrence,* 66 US (1 Black) 522; 17 L Ed 180 (1861); *Venner v Great Northern R Co,* 209 US 24; 28 S Ct 328; 52 L Ed 666 (1908); Joiner and Miller, *Rules of Practice and Procedure: Study of Judicial Rule Making,* 55 Mich L Rev 623, 634, 645 (1957).

plaintiff, admittedly less than the $3,000 jurisdictional requirement which existed at the time of the filing of this cause of action[6] may be aggregated to achieve circuit court jurisdiction. This is a question of first impression in our state. Defendants cite two cases which they assert stand for the proposition that claims may not be aggregated to achieve circuit court jurisdiction, *Henderson v Detroit & M R Co,* 131 Mich 438 (1902); *Barker v Vernon Twp,* 63 Mich 516 (1886). *Barker* stated as dicta that each party joined as a plaintiff had to individually meet the jurisdictional requirements. 63 Mich 520. The statement in *Henderson* seems to imply that aggregation is not permissible, but does not explicitly state that contention. Because the holdings in these cases did not turn on the question of aggregation, and because they were decided before our Court recognized the propriety of class actions in *Detroit v Detroit United Railway,* 226 Mich 354 (1924), these cases are clearly not dispositive of the issue involved.

We hold that the aggregation of claims will not be permitted as a mode of obtaining circuit court jurisdiction in class action cases. We find the reasoning of the United States Supreme Court in *Snyder v Harris,* 394 US 332; 89 S Ct 1053; 22 L Ed 2d 319 (1969) persuasive. The Court was dealing with two cases. In each, the plaintiff sued for himself and all others similarly situated. In each, the plaintiff alleged personal damages insufficient to sustain Federal jurisdiction and requested the Court to aggregate the various claims. In denying the request, the Court stated (p 335):

"The traditional judicial interpretation * * * has been from the beginning that the separate and distinct

---

[6] The jurisdictional requirement at the present time is $10,000. See 1971 PA 148.

claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement. Aggregation has been permitted only (1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest. * * * Spurious class actions * * * were in essence merely a form of permissive joinder in which parties with separate and distinct claims were allowed to litigate those claims in a single suit simply because the different claims involved common questions of law or fact. In such cases aggregation was not permitted: each plaintiff had to show that his individual claim exceeded the jurisdictional amount."

This refusal was based upon a settled interpretation of the phrase "matter in controversy" which is similar to the phrase "amount in controversy" used in MCLA 600.8301; MSA 27A.8301 to define the upper dollar limit of district court jurisdiction.

Plaintiffs have argued that following *Snyder* will retard if not eliminate the use of the class action device in matters such as consumer protection suits. We share the plaintiffs' concern but not their conclusion. Such suits commonly present traditional forms of equitable claim which permits entry into the circuit courts.[7] Once properly within that domain, a class action will be appropriate.

An example is *Bond v Ann Arbor School Dist,* 383 Mich 693 (1970), where two plaintiffs brought suit on behalf of themselves and all parents of school children within the district. They sought a

---

[7] The Metropolitan Detroit AFL-CIO Council in its brief Amicus Curiae states that it is presently appearing on behalf of its members in several pending consumer class actions. It concedes that in the three cases cited in its brief, which it is presently appearing in, the plaintiffs sought injunctive relief and thus were entitled to circuit court jurisdiction. Thus, there is no evidence that our holding today will impair the usefulness of the class action as a device for consumer protection.

judgment declaring certain fees and charges to be unconstitutional, an injunction prohibiting any further charges and a refund of all those fees and charges collected since the suit was instituted. As to the propriety of the class action, this Court stated (p 702):

"The Court of Appeals found plaintiffs' action to be a proper class suit. The action was treated as a class suit by the trial court. If the class action was properly brought, the fact that the fees to be recovered are small for each member of the class, or that expense may be entailed in making a refund, or that the funds have been used by defendant, ought not to bar recovery. It is in the very nature of a class action that the claim of each individual member of the class may be such as to alone scarcely warrant pursuit of repayment. If an action is successful, the fruits of the action should not be denied to the class unless the reasons for denial are most cogent. We do not perceive here such difficulties as would merit denying recovery. This situation was one peculiarly adapted to a class suit. The claim of each member of the class alone did not warrant an action, all members were affected in like manner by the action of defendant, and the issue was one that demanded legal clarification."

The plaintiffs in the instant case, unlike those in *Bond,* have pursued a purely legal remedy.

Also instructive is Justice Levin's opinion in *Pressley v Wayne County Sheriff,* 30 Mich App 300 (1971). Plaintiff sued for a writ of mandamus on behalf of himself and all others similarly situated. A statute permitted those accused of traffic offenses to post bond by depositing ten percent of the amount of bail set by the court. Some judges claimed the right to deny this benefit to certain offenders by also requiring a surety deposit.

The circuit court granted the relief sought but only as to the particular plaintiff. In indicating

that relief should have been extended to all others with the class, Justice LEVIN offered the following quotation from *Montgomery Ward & Co, Inc v Langer,* 168 F2d 182, 187 (CA 8, 1948), (p 318):

" 'The class action was an invention of equity [citation omitted], mothered by the practical necessity of providing a procedural device so that mere numbers would not disable large groups of individuals, united in interest, from enforcing their equitable rights nor grant them immunity from their equitable wrongs.' "

Justice LEVIN then proceeded to list some relevant factors (p 320):

"As in *Ann Arbor School District,* the claim of each member of the class might not warrant an action; surely the attorneys representing Pressley would have found it simpler to obtain a $50 surety bond than to commence and prosecute this litigation. All members of the class Pressley represents are affected in like manner by the actions he complains of and the issue is one that demands legal clarification.

"The adaptation of the class action to the protection of the rights of indigent accused persons is a sensible extension of this procedural device which was fashioned in equity to assure that important rights would not go unvindicated. In *Adderly v Wainwright* (MD Fla, 1968), 46 FRD 97, the court ruled that habeas corpus applicants attacking the Florida death penalty in capital cases could maintain a class action. There were in excess of 50 prisoners in the class sought to be represented but, as here, the size of the class was subject to constant fluctuations. The court declared that both the size of the class sought to be represented and its lack of stability made joinder of all members impracticable. There were common questions of law and fact involving the death penalty and Florida's practice in capital cases. The coincidence of the interests of the representatives and the other members of the class was thought to insure that the interest of the class would be ade-

quately and fairly protected by the representative parties."

It should be clear that our decision today does not speak in terms so broad as to foreclose legitimate class action claims. The class action device remains a valuable and necessary vehicle for obtaining adequate relief in certain situations.

Amicus Curiae also cite numerous cases in which circuit court jurisdiction was allowed without the minimal jurisdictional amount being present. They contend that these cases are support for the proposition that Michigan has recognized aggregation of claims or, at the very least, the right to prosecute class actions in circuit court despite the jurisdictional amount. However, these cases merely reinforce the views expressed above. In all of these cases, the plaintiff asserted a separate basis of jurisdiction from the minimum amount of damages. Thus, in *Alan v Wayne County,* 388 Mich 210 (1972), plaintiff had filed a complaint for declaratory judgment and an injunction. It is clear that the circuit court is the only court that has jurisdiction to grant injunctive relief. The district court by the terms of MCLA 600.8301; MSA 27A.8301 does not deprive the circuit court of jurisdiction in cases involving equitable relief. Plaintiff thus had a separate basis of circuit court jurisdiction and once the plaintiff was in circuit court, he had the right to utilize any procedural rule including GCR 1963, 208.1. All of the other cases are likewise distinguishable.[8]

---

[8] *Theatre Control Corp v Detroit,* 370 Mich 382 (1963), was a case where plaintiffs requested injunctive and declaratory relief. In *American State Savings Bank, Trustee v American State Savings Bank,* 288 Mich 78 (1939), plaintiff requested declaratory relief. In *Locke v Detroit,* 335 Mich 29 (1952), plaintiffs sought repayment of a 10% contribution from a two-year salary. The amount owed to each plaintiff was over the $100 jurisdictional requirement for circuit court. In *Metro Homes, Inc v City of Warren,* 19 Mich App 664 (1969),

Finally, we must briefly answer the assertions of the Amicus Curiae that since all class actions are equitable in nature, they must be maintained in circuit court. We do not accept this assertion. This proposition is based on the fact that a class action is a distinct form of relief such as an injunction or writ of mandamus. However, class actions are merely procedural devices to expedite proceedings in certain cases. The type of class action involved in this case, the so-called spurious action (see GCR 1963, 208.1[3]) is actually a form of permissive joinder of parties. It is not a separate cause of action and the rules under GCR 1963, 208.1 do not create a new cause of action. Thus, we hold that the Court of Appeals was incorrect in permitting the aggregation of claims.

The judgment of the Court of Appeals is reversed and the judgment of the trial court dismissing the action is affirmed. Costs to defendant.

T. E. BRENNAN and M. S. COLEMAN, JJ., concurred with SWAINSON, J.

LEVIN, J., did not sit in this case.

leave to appeal denied, 383 Mich 761 (1970), cert den, 398 US 959; 90 S Ct 2175; 26 L Ed 2d 544 (1970) the original action was filed on April 14, 1965, over three years before the district courts were created by 1968 PA 154. Each individual claim was over the $100 jurisdictional requirement for circuit court. See Beauty Built Construction Corp v City of Warren, 375 Mich 229, 231 (1965).