ROMULUS CITY TREASURER v WAYNE COUNTY DRAIN
COMMISSIONER

Docket No. 62508. Argued December 3, 1979 (Calendar No. 5).—De-
cided July 2, 1982.

The Romulus City Treasurer, treasurers of other municipal corpo-
rations and townships, and two taxpayers brought an action for
themselves and on behalf of all others similarly situated in the
Wayne Circuit Court against the Wayne County Drain Commis-
sioner, the Wayne County Board of Commissioners, Wayne
County, and the Wayne County Treasurer challenging the 1975
and 1976 drain taxes. The plaintiffs alleged that the defendants
illegally permitted the use of monies collected through special
assessments to pay administrative expenses of the drain com-
missioner. The plaintiffs contend that administrative expenses
should only be paid out of general tax funds and that the
collection of monies to be used for such expenses under the
guise of special assessments constitutes constructive fraud. The
complaint prayed for a declaration of the plaintiff treasurers'
standing to bring the action, a preliminary injunction, an
accounting of the drain commissioner's records relative to the
dispute, a declaration that the assessments were illegal and
that administrative expenses should be paid only out of the
general fund, and a return to the property owners of the
monies which had been placed in escrow by the municipal
treasurers. The Wayne Circuit Court, John R. Kirwan, J.,
granted accelerated judgment for the defendants on the claims
for return of the funds held in escrow on the grounds that the

REFERENCES FOR POINTS IN HEADNOTES

[1] 25 Am Jur 2d, Drains and Drainage Districts §§ 38, 43, 44.
[2, 5] 25 Am Jur 2d, Drains and Drainage Districts § 58.
  72 Am Jur 2d, State and Local Taxation §§ 1105, 1141.
[3] 25 Am Jur 2d, Drains and Drainage §§ 53, 55.
  71 Am Jur 2d, State and Local Taxation § 169.
  72 Am Jur 2d, State and Local Taxation § 1070.
[4] 73 Am Jur 2d, Statutes §§ 430-438.
[6] 25 Am Jur 2d, Drains and Drainage Districts § 58.
  70 Am Jur 2d, Special or Local Assessments § 196.

claims were within the exclusive jurisdiction of the Tax Tribunal and were barred by the 30-day period of limitation of the Drain Code. The Court of Appeals, N. J. Kaufman, P.J., and D. E. Holbrook, J. (Bronson, J., dissenting), reversed, holding that the municipal treasurers' standing to bring the action could not be denied without a full evidentiary hearing, that if fraud on the defendants' part could be proved the claim would not be barred by the statute of limitations, and that because the Tax Tribunal lacked equity jurisdiction, the circuit court was the proper forum (Docket Nos. 31365, 77-24). The defendants appeal.

In an opinion by Chief Justice Coleman, joined by Justices Williams, Fitzgerald, Ryan, and Moody, the Supreme Court *held:*

An action which challenges the use of funds obtained through special drain assessments to pay administrative expenses of a drain commissioner is equitable in nature and is not within the exclusive and original jurisdiction of the Tax Tribunal. Municipal treasurers may have standing to bring such an action in a circuit court under extraordinary circumstances and may place the funds in escrow in lieu of performing their ministerial duty to release the funds collected to the county. Affected property owners may claim a return of the escrow funds in the circuit court. The 30-day period of limitation prescribed by the Drain Code for recovery of a drain tax does not apply to the property owners' claims because the return of illegally collected funds is sought rather than a tax refund. The determination of the timeliness of the property owners' action is controlled by the doctrine of laches.

1. A challenge to the payment of administrative expenses from special drain assessment funds is not a proceeding for direct review of a final decision or determination by an agency relating to special assessments under property tax laws within the original and exclusive jurisdiction of the Tax Tribunal as prescribed by the Tax Tribunal Act. Without a clear mandate of law, the Legislature cannot be assumed to have intended to divest circuit courts of their equitable jurisdiction in matters involving the appropriate use of funds collected under the guise of special assessment laws.

2. The municipal treasurers in this case cannot be found to lack standing to challenge the use of special assessments before a determination is made with respect to whether extraordinary circumstances exist which would justify a refusal by the treasurers to perform their ministerial duties. If it is determined that such circumstances exist, there is no good reason for

precluding the treasurers from seeking instructions from the circuit court relative to the funds previously placed in escrow. The treasurers' allegations are sufficient to overcome the defendants' motion. They are entitled to an opportunity to prove the extraordinary circumstances which they have alleged.

3. The Legislature has not shown a clear intent to divest circuit courts of their equity jurisdiction to consider the property owners' claims to the funds in escrow. If the funds are determined to have been justifiably withheld by the municipal treasurers, the property owners' claims for refund of the monies would not be claims for tax refunds within the jurisdiction of the Tax Tribunal, and the circuit court would be the forum able to grant complete relief.

4. Because the property owners seek a return of funds held in escrow by the municipal treasurers and not a refund of a drain tax paid over to the county, their action is not governed by the 30-day period of limitation of actions to recover a drain tax. The timeliness of the action is controlled by the doctrine of laches.

Justice Levin, joined by Justice Kavanagh, concurring, would hold that whether the case is within the jurisdiction of the Tax Tribunal is not dispositive. The remedy provided by the Tax Tribunal Act is inadequate, because of procedural limitations, to afford the plaintiffs complete relief. Such relief, under the facts of the case, can only be provided in equity and requires remand for trial in the circuit court.

1. Both the Drain Code and the Tax Tribunal Act require that challenges to assessments and taxes be brought within 30 days or less or be barred, and because this action was not commenced within 30 days it would be barred either under the Drain Code or the Tax Tribunal Act unless it can be maintained in equity. The source of the plaintiffs' substantive claim that the Drain Commissioner acted in excess of his authority is the Drain Code, and equitable principles need be invoked only to overcome the procedural limitations of the Drain Code or, if applicable, the Tax Tribunal Act. When established procedures are inadequate to vindicate a recognized right, in this case a property owner's right not to be assessed except in accordance with statutory authority, equity will entertain the cause and fashion an appropriate remedy.

2. A court of equity could fashion complete relief in this case without infringing on the rights of innocent third parties. Should the court determine that the drain commissioner did act in excess of his authority, as the plaintiffs allege, in levying

assessments to pay the administrative expenses of his office, the court could order a refund out of the escrowed funds, or, should it determine that the county board of commissioners should have appropriated the funds for administration, it could order a refund payable out of general tax funds.

3. The plaintiff property owners should be permitted to maintain a class action in this case. Over 60,000 persons are in the class and only a small amount of money is involved for each taxpayer. Because the rules of the Tax Tribunal do not provide for the maintenance of class actions and also require payment of fees far greater than the refund sought for the initiation of separate actions, equity is the only forum which can provide effective adjudication.

86 Mich App 663; 273 NW2d 514 (1978) affirmed.

Opinion of the Court

1. Taxation — Tax Tribunal — Jurisdiction — Equity — Drain Taxes.

An action which challenges the use of funds obtained through special drain assessments to pay administrative expenses of a county drain commissioner is equitable in nature and is not a proceeding for direct review of a final decision or determination by an agency relating to special assessments under property tax laws within the original and exclusive jurisdiction of the Tax Tribunal (MCL 205.731; MSA 7.650[31]).

2. Taxation — Drain Taxes — Property Owners — Limitation of Actions.

Property owners who are affected by special drain assessments, challenged as illegal by municipal treasurers, may bring actions in a circuit court for a return of the funds collected pursuant to the assessments where the funds are placed in escrow by the treasurers in lieu of payment over to the county pending resolution of the challenge; such an action is not a suit to recover a drain tax and is not governed by the period of limitation prescribed by the Drain Code (MCL 280.265; MSA 11.1265).

3. Taxation — Municipal Treasurers — Standing — Drain Taxes.

Municipal treasurers may have standing under extraordinary circumstances to challenge the use of funds collected as special drain assessments in lieu of paying the funds over to the county; allegations of such circumstances are sufficient to overcome a motion for accelerated judgment on the grounds that the treasurers lack the legal capacity to sue, and, if proved,

enable the treasurers to proceed to seek instructions from the
court regarding the proper disposition of the funds.

CONCURRING OPINION BY LEVIN, J.

4. EQUITY — STATUTORY REMEDIES — DEFICIENCIES.
    *The principles which courts of equity developed to redress defi-
    ciencies of the common law are applicable where the substan-
    tive law is statutory; where a statutory procedure or remedy is
    inadequate, a court of equity may fashion a decree providing
    the relief to which a plaintiff's proofs show that he is entitled.*

5. TAXATION — DRAIN CODE — LIMITATION OF ACTIONS — EQUITY.
    *The Drain Code provides that a challenge to a drain assessment
    must be brought in certiorari proceedings within a specified
    period of limitation or be barred, and the provision applies
    where a drain commissioner acts within his authority in levy-
    ing the assessment; where a drain commissioner acts in excess
    of his authority and certiorari proceedings are inadequate to
    vindicate the rights of an assessed property owner, equitable
    relief may be sought without regard to the procedural limita-
    tions of the Drain Code (MCL 280.161; MSA 11.1161).*

6. TAXATION — DRAIN CODE — CLASS ACTIONS — EQUITY.
    *A class action challenging a drain assessment on the ground that
    it was made by a drain commissioner in excess of his authority
    may be brought in equity where, under the circumstances of
    the case, the administrative remedy provided by the Drain
    Code is inadequate (MCL 280.161; MSA 11.1161).*

*Harry S. Ellman* for plaintiffs.

*George H. Cross,* Corporation Counsel, and *John
K. Godre,* Assistant Corporation Counsel, for de-
fendants.

COLEMAN, C.J. The question presented in this
case is whether the defendants were entitled to
accelerated judgment on any of the following
grounds: the circuit court lacked subject-matter
jurisdiction; the treasurer plaintiffs lacked stand-
ing; or the statute of limitations barred the plain-
tiffs' claim. We hold, first, that this is, at least in
part, an equitable action, not within the Tax Tri-

bunal's exclusive jurisdiction, and thus properly brought in the circuit court. Secondly, we hold that the treasurer plaintiffs' standing may not yet be determined to be lacking because this case may present the extraordinary circumstances necessary for a township or city treasurer to have standing to challenge a county drain commissioner's actions. Thirdly, we hold that the 30-day period of limitation asserted by the defendants to bar this action is not applicable.

I

The plaintiffs are township and city treasurers, acting in their official capacities, and landowners. They instituted the present proceedings on July 2, 1976, challenging their 1975 drain taxes.[1] Plaintiffs allege that defendants have committed a constructive fraud by collecting money for administrative expenses through special assessment procedures. The monies collected through special assessments, plaintiffs contend, are to be placed in the Revolving Drain Fund, and the enumerated purposes of the fund do not include the payment of such expenses of the drain commissioner's office as the yearly services of clerks, stenographers, engineers and the assessing department. The complaint states that 78% of the money received through the special assessments provided for in § 196 of the Drain Code of 1956[2] has been used for such administrative purposes. The complaint further states that several hundred thousand dollars, which are

[1] Plaintiffs later filed an amended complaint raising the same allegations with respect to their 1976 drain taxes.

[2] 1956 PA 40; MCL 280.196; MSA 11.1196. Although the 1976 amendments to the Drain Code of 1956, 1976 PA 344, may have rendered certain aspects of this case moot, the existence of an escrow account and the necessity of determining its disposition keeps the controversy alive.

presently in escrow, were additionally earmarked for these administrative expenses. Plaintiffs contend that these expenses should only be paid out of funds received through general taxation, and that the collection of such money under the guise of the special assessment laws constitutes a constructive fraud. Plaintiff treasurers argue that to release to the county the funds collected and now in escrow would violate the public trusts and the duties of their offices.[3]

Plaintiffs seek various forms of relief. They seek a declaration of the rights of the treasurer plaintiffs to bring this action and an accounting of the drain commissioner's records as they relate to the assessments in dispute and to the funds used for administrative expenses. They also seek a declaration that the disputed assessments are illegal and that the drain commissioner's administrative expenses must be paid from the county's general fund. Additionally, they request a preliminary injunction prohibiting the defendants from enforcing the special assessments and from using the Revolving Drain Fund for administrative expenses, and an order that the monies held in escrow be returned to the landowner plaintiffs.

---

[3] Plaintiffs also allege that funds in excess of $800 per mile were spent on drain repair and maintenance and that approval of the expenditures by 50% of the legislative bodies of public corporations in the drainage district was thus required by § 196 of the Drain Code of 1956. They allege that such approval was never obtained, and that the assessments were not levied according to the benefits received or within two years from the completion of inspection work as required by § 196 of the Drain Code of 1956. Additionally, they contend that the notice required by § 196 was not given.

The parties have not sought to distinguish the various allegations of plaintiffs' complaint to show how they may differ in relation to this motion for accelerated judgment. Thus, since consideration of plaintiffs' allegation of constructive fraud and the factual basis for that allegation is sufficient to dispose of the issues presented, we will not seek to ascertain whether these allegations, either individually or in conjunction with the constructive fraud claim, merit a different disposition.

Defendants filed a motion for accelerated judgment in which they claimed that the circuit court lacked subject-matter jurisdiction, that the claim was barred by a 30-day period of limitation, and that the treasurer plaintiffs lacked the legal capacity to sue. The circuit court granted accelerated judgment relative to the landowner plaintiffs' claims for tax refunds. The circuit court considered these claims to be within the exclusive jurisdiction of the Tax Tribunal and also to be barred because they were not timely brought. The court denied the motion relative to the treasurer plaintiffs' requests for injunctive and declaratory relief.

Both parties appealed, the defendants by leave granted, to the Court of Appeals. The Court of Appeals reversed the partial accelerated judgment and otherwise affirmed the circuit court's order. *Romulus City Treasurer v Wayne County Drain Comm'r,* 86 Mich App 663; 273 NW2d 514 (1978). The Court of Appeals held that because of plaintiffs' allegations of fraudulent conduct, the plaintiff treasurers' standing to sue could not be denied· without a full evidentiary hearing. The Court also concluded that if fraudulent conduct on the part of the defendants could be proved, the claim would not be barred by the statute of limitations. It further held that since the Tax Tribunal lacked equitable jurisdiction, this case was properly brought in circuit court.

This Court granted leave to appeal and asked the parties to include within the issues to be briefed the question "whether the Michigan Tax Tribunal is the only forum in which relief can be sought for allegedly illegal drain tax assessments". 406 Mich 976 (1979).

## II

### A

This case was heard and is being decided with *Wikman v Novi, ante,* p 617. Both cases raise questions concerning the scope of the Tax Tribunal's exclusive jurisdiction, and both involve special assessments. The plaintiffs in this case, however, make allegations that were not made in *Wikman.* They contend, *inter alia,* that the defendants have been collecting most of the money needed for the defendant drain commissioner's administrative expenses through special assessment procedures, and that the money presently being held in escrow has been similarly earmarked for such expenses. This, they contend, constitutes constructive fraud. We need not pass on the merits of this contention; we need only consider whether this is a claim that may properly be considered by a circuit court acting within its equitable jurisdiction.

Plaintiffs' claim of constructive fraud in this case differs from the claim in *Wikman* that the assessments were not levied according to the benefits received. The focus of the present claim concerns not the factual underpinnings of the pertinent assessments, but rather how funds collected pursuant to the special assessment laws may be spent. Any conclusion as to whether the funding of administrative costs through the special assessment procedures constitutes constructive fraud would involve both statutory construction and a consideration of the equitable doctrine of constructive fraud. Thus, *Wikman* is not directly on point and reconsideration of the provisions of the Tax Tribunal Act is necessary.

MCL 205.731; MSA 7.650(31) provides:

"The tribunal's exclusive and original jurisdiction shall be:

"(a) A proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under property tax laws.

"(b) A proceeding for refund or redetermination of a tax under the property tax laws."

The tribunal that was created to exercise such jurisdiction was labeled a "quasi-judicial agency", MCL 205.721; MSA 7.650(21), whose membership is to be comprised of persons with various specified qualifications. Of the seven members, two must be attorneys with experience either in property tax matters or in judicial or quasi-judicial office. MCL 205.722; MSA 7.650(22). One member must be a certified assessor; one, an experienced professional real estate appraiser; and one, a certified public accountant with experience in state-local tax matters. Not more than three of the seven members are to be members of any one professional discipline and persons who are not members of any of the enumerated disciplines are required to have experience in state or local tax matters.

The expertise of the tribunal members can be seen to relate primarily to questions concerning the factual underpinnings of taxes. In cases not involving special assessments, the tribunal's membership is well-qualified to resolve the disputes concerning those matters that the Legislature has placed within its jurisdiction: assessments, valuations, rates, allocation and equalization. In special assessment cases, the tribunal is competent to ascertain whether the assessments are levied ac-

cording to the benefits received. Although the tribunal, in making its determinations, will make conclusions of law, MCL 205.751; MSA 7.650(51), the matters within its jurisdiction under MCL 205.731; MSA 7.650(31) most clearly relate to the basis for a tax, and much less clearly to the proper uses which may be made of the funds once collected. Questions concerning how the funds collected may be expended do not appear to be implicated in disputes related to assessments, valuations, rates, allocation and equalization. The question presented here is whether the exclusive jurisdiction of the Tax Tribunal extends to such questions when the funds are collected pursuant to special assessment laws.

As to the declaratory and injunctive relief sought by plaintiffs, we conclude that the question whether the defendants may pay administrative expenses with funds that have been collected pursuant to the special assessment procedures for drains is not "a proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to * * * special assessments * * * under the property tax laws". Divestiture of jurisdiction cannot be accomplished except under clear mandate of law. *Leo v Atlas Industries, Inc,* 370 Mich 400, 402; 121 NW2d 926 (1963), *Crane v Reeder,* 28 Mich 527, 532-533 (1874). Because questions as to the lawful expenditure of funds do not arise within the other matters within the tribunal's jurisdiction, and because the tribunal's expertise relates much more directly to other questions concerning the lawfulness of challenged special assessments, we cannot assume that the Legislature intended to divest the circuit court of its equitable jurisdiction to grant declaratory and

injunctive relief in matters involving the appropri-
ate use of funds collected under the guise of spe-
cial assessment laws.

While we are unable to conclude that subsection
(a) of MCL 205.731; MSA 7.650(31) prohibits the
declaratory and injunctive relief that the plaintiffs
seek in this case, the question remains whether
subsection (b) would preclude the circuit court
from ordering that the funds in escrow be re-
turned to the landowner-plaintiffs. Subsection (b)
provides that the exclusive and original jurisdic-
tion of the Tax Tribunal includes "[a] proceeding
for refund or redetermination of a tax under the
property tax laws". Similarly, MCL 205.774; MSA
7.650(74) provides: "The right to sue any agency
for refund of any taxes other than by proceedings
before the tribunal is abolished as of September
30, 1974." However, the scope of these provisions
and the questions plaintiffs have raised concerning
the Legislature's power so to proscribe the jurisdic-
tion of a court of equity need not be addressed at
this stage in these proceedings. As will be dis-
cussed below,[4] if the treasurer plaintiffs are found
to have standing, and if they are found to have
justifiably withheld from the county the monies
presently in escrow, a consideration of the requests
of landowner plaintiffs for repayment of the mon-
ies in escrow would be within the circuit court's
jurisdiction.

## III

Defendants contend that the treasurer plaintiffs
lack standing to bring this action. The treasurers,
having no financial stake in the outcome of this

---

[4] See part IV, *infra.*

litigation,[5] base their claim of standing on the public trusts and duties of their offices. Defendants argue that their offices cannot be bases for standing because the duties of their offices were ministerial: to pay the county treasurer the taxes collected from the drain assessments. There is no statutory authority, defendants argue, by which city and township treasurers can review the actions of the county drain commissioner. Plaintiffs do not challenge defendants' assertion that the duties of their offices in this case were ministerial.[6]

Plaintiffs cite three cases for the proposition that a public official can maintain a suit commensurate with his or her public trusts and duties. See *Mayor of Dearborn v Dearborn Retirement Board of Trustees*, 315 Mich 18; 23 NW2d 186 (1946); *Auditor General v Lake George & M R R Co*, 82 Mich 426; 46 NW 730 (1890); *Berrien County Treasurer v Bunbury*, 45 Mich 79; 7 NW 704 (1881). Defendants are correct in saying that these cases are all quite different from the instant situation.

[5] The treasurers do assert that their bonds would have been jeopardized had they failed to bring this action. However, the bond required for a township treasurer is to assure that he or she will faithfully discharge the duties of the office and "faithfully and truly account for and pay over according to law, all moneys which come into the treasurer's hands as treasurer". MCL 41.77; MSA 5.69. While we conclude, below, that in extraordinary circumstances a treasurer may be excused from the performance of statutory duties and may have standing to challenge the actions of a county drain commissioner, we do not imply that a treasurer has a duty to take such action. Certainly, the treasurers' responsibilities as provided in the Drain Code do not establish any such duty. See MCL 280.264-280.265; MSA 11.1264-11.1265. Because we can see no basis from which such a duty would arise, we do not agree that treasurers' bonds give them a financial stake in this litigation.

[6] Defendants cite the following provisions as defining the pertinent duties of township supervisors and treasurers: §§ 263, 265, and 303 of the Drain Code of 1956, MCL 280.263; MSA 11.1263, MCL 280.265; MSA 11.1265, and MCL 280.303; MSA 11.1303, MCL 41.76-41.78; MSA 5.68-5.70, MCL 211.54; MSA 7.98.

In *Mayor of Dearborn,* the mayor's duties, as specified in the city charter, included preparing and administering the annual budget. He considered one provision that had been included in the budget by the city council to be illegal, and he vetoed it. When the city overrode his veto, he sought a declaratory judgment on its legality. This Court found that he had the capacity to bring such a suit by virtue of the public trusts and duties of his office.

This Court also recognized the capacity of public officials to sue commensurate with their public trusts and duties in *Auditor General v Lake George & M R R Co.* The suit was based on certain statutes which provided that the Auditor General was to assess and collect taxes from the railroads and that if any refused to pay the State Treasurer was to give the names of such companies to the Attorney General, who was to file suit to collect them. This Court held that a suit brought by the "Auditor General * * *, by direction of * * * [the] Attorney General" adequately satisfied the statutory provisions. Similarly, in *Bunbury,* the Court concluded that a county treasurer, within his public trusts and duties, could sue on a bond that, pursuant to statute, named him as the obligee.

In these cases, while standing was not expressly granted by statute, or by city charter in *Mayor of Dearborn,* standing was implied by the duties and obligations that were expressly stated. The treasurer plaintiffs in the instant case assert no statutory duties or obligations which imply their standing. Thus, these cases do not establish their capacity to challenge the actions of the county drain commissioner.

There is, however, authority from which one may conclude that standing will be present in extraordinary circumstances. In two instances, this Court has refused to issue a writ of mandamus to compel performance by township officers of their ministerial duty of assessing a tax. In *Huron County Drain Comm'r v Chandler Twp Supervisor,* 90 Mich 278, 279; 51 NW 282 (1892), the Court, in refusing to grant mandamus, stated: "The proceedings being so defective that no legal drain could be laid out, the supervisor was not in the wrong in refusing to assess the tax." The writ was also refused in *Cheboygan County Board of Supervisors v Mentor Twp Supervisor,* 94 Mich 386; 54 NW 169 (1892), in which the county board passed a resolution that $2000 would be collected through assessments for the purpose of obtaining a poorhouse. Their intent was actually to use the money for the illegal purpose of securing a location for a tannery. The Court, in denying the county's petition for mandamus to compel the townships to spread the assessments on their rolls, noted that the writ was discretionary, and further stated:

"The action of the petitioner in the present case was not only intentionally and willfully fraudulent, but it was criminal, and a gross outrage upon the rights of tax-paying citizens.

"It would, in my judgment, be a reproach upon the law if courts were, under the circumstances of this case, compelled to issue the writ of *mandamus,* and thereby compel the imposition of a fraudulent tax. The circumstances must be exceptionally extraordinary which will justify a supervisor in refusing to comply with his statutory duty, but we think the respondents in this case were justified in so doing." 94 Mich 388.

In *Scholtz v Smith,* 119 Mich 634, 635-636; 78 NW 668 (1899), a mandamus action brought by a

county drain commissioner against a township supervisor, this Court reiterated that the circumstances must be extraordinary to justify a township official's refusal to perform ministerial duties:

"We have held that the supervisor is not vested with the authority to sit in judgment upon the action of the board of supervisors. When, in the exercise of their lawful authority, they order a tax to be spread, it is his duty to spread it, and not block the regular course of the public business by refusal because he may think that the board should have decided differently. Nor is it a part of the official duty of the supervisor to sit in judgment upon drain proceedings, which are within the jurisdiction of another officer. If his ideas of the sufficiency of petitions and other papers in drain proceedings, and the rumors that come to his ears about irregularities, and his notion of the time that taxes should be laid with reference to the completion of the drain, are to be held sufficient to justify a refusal to spread a tax which the duly-constituted authorities have ordered spread, the public business in connection with drains will be seriously embarrassed as soon as the fact becomes generally known. * * * As a rule, it is safe for a public officer to obey the commands of the law, and perform the duties imposed upon him, without attempting to find an excuse for refusing in irregularities in the proceedings of others, with which he has nothing to do.

"* * * The prevailing opinion in [Cheboygan County Board of Supervisors, supra] admits that circumstances must be extraordinary which will justify a refusal by an officer to perform a statutory duty, and the refusal to grant the writ in that case may be ascribed to the exercise of a lawful discretion."

See also Laubach v O'Meara, 107 Mich 29; 64 NW 865 (1895).

It is not altogether clear, perhaps, whether the decisions in Cheboygan County Board of Supervisors and Huron County Drain Comm'r, should be

classified simply as instances in which this Court
in its discretion refused to enforce the clear duties
of public officials, or whether they are instances in
which extraordinary circumstances actually re-
lieved the public officials of their statutory duties.
The uncertainty arises because of cases in which
this Court has held that where the duty of the
public official is certain, the Court cannot in its
discretion deny the writ. *Municipal Finance Comm
v Marquette Twp School Dist Board of Education,*
337 Mich 639, 644; 60 NW2d 495 (1953); *Hamilton
v Secretary of State,* 212 Mich 31, 42; 179 NW 553
(1920). Regardless of the classification given, how-
ever, extraordinary circumstances have allowed
ministerial duties to go unfulfilled that otherwise
would have been fulfilled. See *Cheboygan County
Board of Supervisors, supra.*

If the defendant drain commissioner's actions in
the instant situation could be deemed to present
extraordinary circumstances, a petition for manda-
mus to compel the township treasurers to pay the
county the funds collected pursuant to these spe-
cial assessments could have properly been denied.
And if mandamus could properly have been de-
nied, we see no good reason to refuse the treasur-
ers the opportunity to challenge in a court of
equity the actions that would have excused the
performance of their duties. In other words, if the
circumstances are such that the treasurers would
not have been compelled to perform their duties of
paying the county the taxes which they have
collected, there is no good reason for precluding
them from seeking instructions from a court of
equity as to what properly ought to be done with
the funds that they hold. The question whether
extraordinary circumstances exist seemingly can
be determined as well by a court of equity as by
this Court in a mandamus action. Thus, we con-

clude that if extraordinary circumstances exist, a township treasurer has standing to challenge the actions of a county drain commissioner.

Contrary to defendants' assertions, we do not, in reaching this conclusion, give license to city and township treasurers to withhold city, school, county, sewer, and highway taxes whenever they feel that the actions of the local governing body are illegal. The circumstances must be truly extraordinary for a township or city treasurer to have standing to challenge the actions of county officials, and sufficient facts need to be pleaded to show such circumstances. *Shavers v Attorney General,* 402 Mich 554; 267 NW2d 72 (1978).

In the instant case, the allegations in the plaintiff treasurers' complaint are sufficient to overcome defendants' motion for accelerated judgment. If plaintiffs prove their allegations, they will show that most of the expenses of the defendant drain commissioner's office, which amount to several hundred thousand dollars for the years 1975 and 1976, have been collected under the guise of being special assessments for drains. This appears to be an egregious misuse of the special assessment procedures contained in § 196 of the Drain Code of 1956; it misleads landowners as to what use is being made of the assessments they pay, and removes from the county a responsibility that it needs to meet through general taxation. The treasurer plaintiffs are entitled to an opportunity to prove the extraordinary circumstances that they have alleged.

IV

We may now properly consider the previously deferred question whether the landowner plain-

tiffs' request for a return of the money presently
held in escrow is a matter within the exclusive
jurisdiction of the Tax Tribunal by virtue of MCL
205.731(b); MSA 7.650(31)(b) and MCL 205.774;
MSA 7.650(74). From the preceding discussion, it is
apparent that under extraordinary circumstances
a city or township treasurer may not be required
to fulfill his or her ministerial duties. If the in-
stant case presents such circumstances, so as to
justify the withholding from the county of the
funds now in escrow, the circuit court will need to
determine what should be done with the funds. We
conclude that, if the funds in escrow have been
justifiably withheld from the county, the land-
owner plaintiffs' claim that the funds should be
repaid to them because of defendants' constructive
fraud is not a claim for a tax refund within the
exclusive jurisdiction of the Tax Tribunal.

We do not reach this conclusion by holding that
equity jurisdiction supersedes the Legislature's in-
tended jurisdiction of the Tax Tribunal. Rather,
we believe that the Legislature has not shown a
clear intent to abolish the circuit court's equity
jurisdiction to consider the plaintiffs' claim to the
funds in escrow. In accordance with the settled
principle that the divestiture of jurisdiction cannot
be accomplished except under clear mandate of
law, *Leo v Atlas Industries, Inc, supra, Crane v
Reeder, supra,* we will not presume an intent not
clearly expressed. Although it is arguable that
MCL 205.731(b); MSA 7.650(31)(b) and MCL
205.774; MSA 7.650(74) could apply because the
funds in escrow were collected as purported special
assessments, a return of the funds from this es-
crow account would not be a typical tax refund
and to treat it as such would likely lead to an
anomalous result. If the circuit court determines

that the funds in escrow were properly withheld from the county, then principles of equity may dictate that the funds should be returned to those who paid them. If so, the court would be in an intractable position if such relief were deemed to be a tax refund over which the circuit court had no jurisdiction. Rather, the rule that equity will grant complete relief is applicable here. *Wayne Prosecuting Attorney v National Memorial Gardens, Inc,* 366 Mich 492; 115 NW2d 312 (1962). The Tax Tribunal Act does not prevent a court of equity from determining what should be done with funds that in extraordinary circumstances have been properly withheld from the county.

Therefore, because in the present posture of this case it is not possible to determine that the funds in escrow were improperly withheld from the county, we cannot conclude that the landowner plaintiffs' request for a return of the escrow monies is a proceeding for a tax refund within the meaning of either MCL 205.731(b); MSA 7.650(31)(b) or MCL 205.774; MSA 7.650(74).

V

The defendant also asserts that the action is barred by a 30-day statute of limitations. The statute, in pertinent part, provides:

"No suit shall be instituted to recover any drain tax * * * unless brought within 30 days from the time of payment * * * and the same procedure observed as is or may be required by the general tax law." MCL 280.265; MSA 11.1265.

This action was not commenced within 30 days from the time of payment.

We do not agree with defendant that, at this stage of these proceedings, the statute can be held to bar plaintiffs' claims. As stated previously, the fund from which the landowner plaintiffs seek reimbursement may be found to have been justifiably withheld from the county due to the extraordinary circumstances of this case. If so, the jurisdiction of a court of equity to grant complete relief will allow it to determine what, according to principles of equity, should be done with the escrow account.

Laches is the controlling doctrine when determining the timeliness of the landowner plaintiffs' claim that they are entitled to the funds in escrow because of defendant's constructive fraud. Although courts will look to analogous statutes of limitations when determining the timeliness of equitable proceedings, it is laches and not the statute of limitations which bars stale claims.[7]

---

[7] Since the defendants, as well as plaintiffs, address the question of the timeliness of this action in terms of the statute of limitations and not laches, neither address whether MCL 600.5815; MSA 27A.5815 applies to the limitation that defendants assert to bar this claim. That statute, as pertinent, provides: "The prescribed period of limitations shall apply equally to all actions whether equitable or legal relief is sought." MCL 600.5815; MSA 27A.5815. We do not necessarily decide whether the "prescribed period of limitations", to which MCL 600.5815; MSA 27A.5815 refers, includes only those limitations contained in the Revised Judicature Act of 1961, 1961 PA 236. Even if the above statute were to apply to the limitation contained in MCL 280.265; MSA 11.1265, it is not at all clear that the present action should be considered a "suit to recover [a] drain tax". Although drain assessments are the source of the presently disputed escrow account, that fact alone does not necessarily mean that this case is within MCL 280.265; MSA 11.1265. A statement by Justice SMITH in his now vindicated dissent in *Consumers Power Co v Muskegon County,* 346 Mich 243, 253; 78 NW2d 223 (1956), is apropos:

"What we have before us is simply an overpayment, to the taxing authorities, arising out of a mutual mistake of fact, an arithmetical, clerical, error. Were we to categorize, we would say that the law of mistake is primarily involved, not the law of taxation."

See *Spoon-Shacket Co, Inc v Oakland County,* 356 Mich 151; 97 NW2d 25 (1959). Similarly, the landowner plaintiffs' claim in this case is not so much a suit for a tax refund as it is a claim that they have an

*Taylor v S S Kresge Co,* 332 Mich 65; 50 NW2d 851 (1952); *Tilley v Brady,* 323 Mich 547; 36 NW2d 140 (1949).

The statutory period which defendants assert to bar this claim is not applicable as an analogous statute of limitations. The apparent purpose of that period of limitation is to allow counties the use of the drain taxes that they have collected without the necessity of waiting a prolonged period of time to ascertain the extent to which the assessments will be challenged. In the instant case, if plaintiffs prove their allegations, the funds in escrow which the county has never received will be shown to have been justifiably withheld from the county and, furthermore, will be shown never to have been intended for the drain construction or repair that the limitation was designed to protect. Thus, we cannot now determine that the statute of limitations which defendants assert to bar this claim is pertinent to the question of laches in this case.

## VI

Although defendants also challenge the landowner plaintiffs' ability to bring a class action, the trial court has not yet addressed this question. Because this case will be remanded, we see no need to address it prior to a decision by that court.

We affirm.

No costs, this being a public question.

---

interest in the escrow account because of the alleged constructive fraud on the part of the defendants. Therefore, even if MCL 600.5815; MSA 27A.5815 applies to the Drain Code limitation (so that the question would not be one of analogy, as in a consideration of laches, but rather a question of whether the Drain Code limitation applies directly to this case) we would conclude that the 30-day limitation of the Drain Code is not applicable.

WILLIAMS, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with COLEMAN, C.J.

LEVIN, J. *(concurring)*. Plaintiffs commenced this action, to set aside a drain assessment and for refund of amounts paid for 1975 and 1976, in equity. They assert that a drain commissioner has no authority to reassess a drainage district to pay the administrative expenses of his office and that therefore the assessments levied in this case are illegal.

In the companion case of *Wikman v Novi, ante,* p 617, decided today, we consider whether the Tax Tribunal Act confers on the Tax Tribunal jurisdiction of an appeal from a decision levying a special assessment. We would, in that case, hold that the circuit court retains jurisdiction because a special assessment is levied, not under "property tax laws",[1] but, rather, under the authority of the laws which define the municipal powers of local units of government.

In the instant case the question of whether the Tax Tribunal has jurisdiction is not dispositive. Because this action was not commenced within 30 days, plaintiffs are barred from obtaining a refund under provisions of both the Drain Code and the Tax Tribunal Act, and can succeed only if they can avoid the limitations ordinarily applicable to refund actions or proceedings by bringing themselves within an overriding equitable doctrine.

We conclude that the cause should be remanded

[1] The jurisdictional statement of the Tax Tribunal Act provides:

"The tribunal's exclusive and original jurisdiction shall be:

"(a) A proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under property tax laws.

"(b) A proceeding for refund or redetermination of a tax under the property tax laws." MCL 205.731; MSA 7.650(31).

for trial because, under principles applied by this Court in litigation respecting the Drain Code, plaintiffs may obtain equitable relief although they did not comply with the statutory procedures. We also conclude that equity can, to afford complete relief, order a refund.

I

The Drain Code authorizes the reassessment of a drainage district for the necessary cost of maintenance and repair of a drain previously installed.[2]

[2] At the time in question, the Drain Code read in pertinent part:

"Sec. 196. (1) * * * Whenever such [annual] inspections disclose *the necessity of expending money for the maintenance and repair of any drain in order to keep it in working order,* the drain commissioner, in the case of a county drain, or the drainage board, in the case of an intercounty drain, may without petition expend an amount not to exceed in any 1 year $800.00 per mile or fraction thereof or 2% of the original cost of the drain and 2% of extensions thereof for maintenance and repair of any drain. Whenever it shall be found necessary by the drain commissioner or the drainage board to expend funds in excess of $800.00 per mile or fraction thereof or 2% of the original cost of the drain and 2% of extensions thereof in any 1 year for maintenance and repair of any drain, such additional amounts shall not be expended until approved by not less than 50% of the total number of legislative bodies of all such public corporations, within or partly within the drainage district.

"(2) In case the fund belonging to the drain is not sufficient to pay for any work authorized by this section, *the drain commissioner or the drainage board shall reassess the drainage district therefor according to benefits received,* which reassessment shall be made and spread upon the city or township tax assessment roll within 2 years from the completion of the inspection work, and in case the total expenditure is more than $800.00 per mile or fraction thereof or 2% of the original cost of the drain and 2% of extensions thereof, all freeholders subject to assessment shall be notified of such assessment by publication in a newspaper of general circulation within the drainage district and by first class mail to each person whose name and address appears upon the last city or township tax assessment roll as owning land within the drainage district. An affidavit of mailing shall be made by the drain commissioner or chairman of the drainage board which shall be conclusive proof that the notices required by this section were mailed. The failure to receive such notices by mail shall not constitute a jurisdictional defect invalidating a drain proceeding or tax, if notice by publication as required by this section were complied with. Whenever an emergency condition exists

Defendant Wayne County Drain Commissioner imposed such a levy on real property owned by plaintiffs Curt Boller, Paul A. Kraft and others.

Boller and Kraft commenced this action in their own interest and in behalf of others similarly situated as a class action, asserting that the reassessment was not authorized by the Drain Code because it was not for maintenance and repair but to provide funds to pay the administrative expense of the office of the Drain Commissioner, and that the Wayne County Board of Commissioners was obliged to provide funds for such expense.[3] There

which endangers the public health, crops or property within their respective districts, the drain commissioner or the drainage board may expend funds for any work contemplated in this chapter subject to the limitations provided in this section for maintenance and repair." MCL 280.196; MSA 11.1196.

[3] On April 22, 1974, the Attorney General, responding to a request from a state senator, stated that in his opinion a special assessment may not be levied under the provisions of § 196 of the Drain Code "for yearly services of clerks, stenographers, engineers and the assessing department under the provisions of said section" and that "only the maintenance and repairs [are] to be assessed", "[h]owever, the administrative expenses incurred in making the assessment authorized under this section may be included". (The opinion is not officially reported.)

It appears that, nevertheless, the Wayne County Board of Commissioners may not have appropriated the requisite funds, and that the Legislature responded by enacting 1976 PA 344 which defines "costs of maintenance or repair" and requires that the expense of clerical, administrative and engineering employees of a drain commissioner or drainage board be paid from the county general fund. Act 344, approved December 19, 1976, with immediate effect, adds the following subsections to § 196:

"(5) For purposes of this section, the costs of maintenance or repair shall include the costs of maintaining the drain in working order to continue a normal flow of water, including the servicing or repair of necessary pumping equipment and utility charges therefor; the cost of keeping the drain free from rubbish, debris, siltation, or obstructions; the cost of repairing a portion or all of a tile or drain to continue the normal flow of water; and other costs associated therewith. When the cost of maintenance and repair of drains includes utility charges, the limitation for maintenance and repair shall not apply except that the drain commissioner or drainage board may levy sufficient special assessments to pay the utility charges but not more than the amount sufficient to pay those charges.

"(6) The salaries, expenses, and fringe benefits of clerical, adminis-

are over 60,000 taxpayers in the affected class and the amount involved for each is generally $1 or $2 per year.

Plaintiffs city and township treasurers joined in the complaint, asserting that they may, to protect property owners from an unauthorized reassessment, refrain from paying defendant Wayne County Treasurer amounts collected in respect to the challenged levy.

The circuit court dismissed the class action brought by Boller and Kraft on the grounds that the Tax Tribunal has exclusive jurisdiction of tax refund claims[4] and that the claim is separately barred by a provision of the Drain Code requiring that a refund action be brought within 30 days.[5] The court held, however, that the city and township treasurers had standing to maintain an action for a declaratory judgment and injunctive relief. The court ordered that the 1975 and 1976 "special drain assessment taxes", which had been held in escrow by the city and township treasurers, be deposited in a special escrow account or accounts with the Wayne County clerk. It appears that upwards of $400,000 is being held in escrow.[6]

The Court of Appeals agreed with the circuit

trative, and engineering employees of the drain commissioner or drainage board working incidental to the operation, repair, or maintenance of a drain shall be chargeable to and paid as budgeted from the county general fund and not chargeable to or by the drain revolving fund." MCL 280.196; MSA 11.1196.

[4] See MCL 205.731; MSA 7.650(31).

[5] MCL 280.265; MSA 11.1265.

[6] The defendants state that the amount contested for 1975 is $266,048.79. The opinion of the dissenting judge in the Court of Appeals states: "At issue is over $400,000 collected by plaintiffs-treasurers which is now being held in escrow pending the disposition of this case".

court that an equitable action for declaratory and injunctive relief could be maintained but reversed its dismissal of the refund claim stating that if the plaintiff property owners could prove their allegations they would be entitled to a refund.[7]

## II

For essentially the reasons set forth in *Wikman v Novi, ante,* p 617, decided today, the Tax Tribunal does not have jurisdiction. As set forth in *Wikman,* the Tax Tribunal has jurisdiction of appeals respecting *ad valorem* property taxes formerly subject to review by the State Tax Commission. Assessments under the Drain Code are generally based on the principle of "benefits derived"[8] and are not *ad valorem.*[9] The State Tax Commission has never had any supervisory responsibility with respect to the functions of a drain commissioner or of a drainage board nor has it ever had any jurisdiction to review an appeal from a drain assessment.

We also observe that it would not be consistent with the simplicity and finality the Legislature sought to achieve by prescribing special procedures providing for limited review of a drain assessment,[10] to hold that drain assessments are now

---

[7] *Romulus City Treasurer v Wayne County Drain Comm'r,* 86 Mich App 663; 273 NW2d 514 (1978).

[8] See, *e.g.,* MCL 280.152; MSA 11.1152.

[9] *Cf. Foren v Royal Oak,* 342 Mich 451, 456; 70 NW2d 692 (1955).

[10] See MCL 280.72a; MSA 11.1072(1), MCL 280.88; MSA 11.1088, MCL 280.106; MSA 11.1106, MCL 280.122; MSA 11.1122, MCL 280.122a; MSA 11.1122(1), MCL 280.123; MSA 11.1123, MCL 280.125; MSA 11.1125, MCL 280.151; MSA 11.1151, MCL 280.155; MSA 11.1155, MCL 280.157; MSA 11.1157, MCL 280.158; MSA 11.1158, MCL 280.161; MSA 11.1161, MCL 280.191; MSA 11.1191, MCL 280.243; MSA 11.1243, MCL 280.493; MSA 11.1493, MCL 280.521; MSA 11.1521, MCL 280.532; MSA 11.1532, MCL 280.563; MSA 11.1563, MCL 280.577; MSA 11.1577, MCL 280.581; MSA 11.1581.

subject to review in an independent, original, *de novo* proceeding in the Tax Tribunal.[11] To so hold would, as set forth in *Wikman,* eliminate safeguards against unjustified litigation provided by the Drain Code and would tend to encourage litigation, thereby prolonging the time before bonds to fund drain projects can be sold and adding to the project cost.

## III

The Drain Code[12] and the Tax Tribunal Act[13] both require that actions challenging assessments and taxes be brought within 30 days or less. Since this action was not commenced within 30 days, it would be barred—whether the Drain Code or the Tax Tribunal Act governs—unless plaintiffs are relieved, in the circumstances of the instant case, of compliance with the applicable 30-day limitation.

Because the plaintiffs are confronted with essen-

---

[11] "A proceeding before the tribunal shall be original and independent and shall be considered de novo." MCL 205.735; MSA 7.650(35).

[12] MCL 280.161; MSA 11.1161 requires that a writ of certiorari issue within ten days after a copy of a final order of determination is filed in the office of the drain commissioner.

MCL 280.265; MSA 11.1265 requires that an action for refund be instituted within 30 days from the time of payment.

[13] When this action was commenced, MCL 205.735; MSA 7.650(35) required that a petition be filed within 30 days after the final decision, ruling, determination, or order or within 30 days after the receipt of a billing for a tax; by reason of amendment (1976 PA 365), beginning January 1, 1977, the jurisdiction of the tribunal in an "assessment" dispute is required to be invoked not later than June 30 of the tax year involved, and in all other matters within 30 days after the final decision, ruling, determination, or order except that a tax bill may be contested within 60 days after mailing for arithmetical errors or mistakes.

Only an appeal from an *ad valorem* assessment must or may be filed "not later than June 30 of the tax year involved". If special assessments are subject to the jurisdiction of the Tax Tribunal, they are subject to the 30-day time limit applicable to "all other matters".

tially the same kinds of defenses under the Drain Code and the Tax Tribunal Act, the critical question in the instant case is not whether the Tax Tribunal has jurisdiction but whether plaintiffs are relieved of complying with the applicable time limitation.

A

The powers of a court of equity, while broad, can be invoked only in particular circumstances. Among the situations where equitable power may be exercised is a case where the plaintiff has a recognized cause of action, but because of some atypical circumstance affecting his cause the common law's procedures and remedies do not provide adequate or complete relief.

The principles which courts of equity developed to redress deficiencies of the common law are also applicable where the substantive law is statutory. If a statutory procedure or remedy is inadequate, a court of equity may in the application of established equitable principles fashion a decree providing the relief to which plaintiff's proofs show that he is entitled.

In the instant case, there is no need to rely on equitable principles to establish plaintiffs' substantive claim. The source of plaintiffs' substantive claim is the Drain Code itself. Plaintiffs assert that the drain commissioner acted in excess of the authority granted by the Drain Code when he reassessed the drainage district for the administrative expense of his office. Plaintiffs invoke equitable principles in an effort to overcome procedural limitations of the Drain Code (or Tax Tribunal Act if held to be applicable) which so burden a refund

action that recovery would be barred even if they succeed in establishing their substantive right to recover. The question here is thus whether equity should supply a remedy, not whether it should provide a right of action.

### B

In *Spoon-Shacket Co, Inc v Oakland County,* 356 Mich 151, 168; 97 NW2d 25 (1959), this Court invoked equitable principles to provide both a substantive right and a remedy unburdened by the statutory time limitations for protesting and appealing an *ad valorem* property tax assessment. The assessment of 19 subdivision lots was increased from between $150 and $400 each to $5,-500 each because the assessor mistakenly assumed that the lots had been improved. After the mistake was discovered, the lots were assessed for the following year at amounts less than one-tenth of the $5,500 assessment. This Court characterized the mistake as constructive fraud and held that the taxpayer was entitled to "equitable relief from the unconscionable effect of crass mistakes of public officials in the field of taxation; mistakes gross enough to constitute fraud".

It is noteworthy that equitable relief was granted although Spoon-Shacket had failed to check the assessment rolls or to appear before the board of review or otherwise to comply with statutory procedures of The General Property Tax Act requiring, if one wishes to appeal without paying the tax under protest and suing for a refund, that a petition be filed with the State Tax Commission.

The Drain Code requires that persons complaining of a drain assessment do so by bringing certio-

rari proceedings within ten days[14] and provides—
similarly to the provision of the Tax Tribunal Act
making its jurisdiction "exclusive"[15]—that "[i]f no
certiorari be brought within the time herein pre-
scribed, the drain shall be deemed to have been
legally established, and the taxes therefor legally
levied, and the legality of said drain and the taxes
therefor *shall not thereafter be questioned in any
suit at law or equity".*[16] (Emphasis supplied.) The
Drain Code also contains provisions which estab-
lish special procedures for appealing the appor-
tionment of benefits[17] and which purport to limit
the power of the circuit court to issue injunctions.[18]

This Court nevertheless has held that "[c]ertio-
rari is not an exclusive remedy under the drain
law. If the remedy of certiorari is inadequate, a
bill in equity will lie to restrain construction of a
drain", *Patrick v Shiawassee County Drain
Comm'r,* 342 Mich 257, 263; 69 NW2d 727 (1955).

*Patrick* and other cases show that if a drain

[14] MCL 280.161; MSA 11.1161.

[15] See fn 4.

[16] See fn 14.

The certiorari review procedure was added to the drain law by 1885
PA 227. Previously, the only method for attacking a drain assessment
was a bill in equity for an injunction. See, *e.g.,* 1881 PA 269.

A number of decisions have held that in the circumstances of the
case presented the certiorari procedure was the exclusive method for
judicial review of drain assessments. See *Detroit Beach Betterment
Committee v Monroe County Drain Comm'r,* 355 Mich 292; 93 NW2d
922 (1959); *Stellwagen v Dingman,* 229 Mich 159; 200 NW 983 (1924);
*Pere Marquette R Co v Auditor General,* 226 Mich 491; 198 NW 199
(1924); *Arnham v Round,* 210 Mich 531; 177 NW 985 (1920); *Toledo, S
& M R Co v Shafer,* 190 Mich 89, 91; 155 NW 712 (1916); *Clinton Twp
v Teachout,* 150 Mich 124; 111 NW 1052 (1907); *Jones v Gable,* 150
Mich 30; 113 NW 577 (1907); *Crandall v McElheny,* 146 Mich 191; 109
NW 261 (1906); *Swan Creek Twp v Brown,* 130 Mich 382; 90 NW 38
(1902).

[17] MCL 280.155-280.156; MSA 11.1155-11.1156.

[18] See MCL 280.267-280.268; MSA 11.1267-11.1268.

commissioner acts in excess of his authority in imposing a drain assessment a court of equity will grant relief although the complainant failed to bring certiorari proceedings. Plaintiffs' complaint in the instant case that the reassessment of the district, although ostensibly for maintenance and repair, is actually to defray administrative expense, is of the same character as the kinds of complaints which this Court has held may be brought in equity.

In *Patrick,* the Court concluded that the authority of the drain commissioner was limited to cleaning out a drain to its original depth and that he had acted in excess of his authority in letting a contract to enlarge and deepen a drain and to take some of plaintiffs' lands for that purpose, and that in "the circumstances of this case it clearly appears that certiorari was not an adequate remedy".

In *Chandler v Heisler,* 153 Mich 1; 116 NW 626 (1908), the Court concluded that "although all the proceedings of the establishment of the drain may be regular and not open to complaint on certiorari" where there had been a failure to comply with an additional requirement not stated in the general drain law "there would seem to be no way to protect the rights of the complainant except by the present remedy"—an injunction to restrain construction until the omitted requirement had been complied with.

In the instant case, also, the plaintiffs are not challenging the "regularity" of the reassessment proceedings. Rather, as in *Patrick* and *Chandler,* they challenge the authority of the drain commissioner to levy the challenged assessment.

In *Meyering Land Co v Spencer,* 273 Mich 703, 708; 263 NW 777 (1935), this Court held that since the purported drains were "not constructed for the purposes of land drainage, but for sewerage purposes", "the drain commissioner was without jurisdiction to establish it", and that an action to enjoin the drain assessment could be maintained although the plaintiffs had failed to bring certiorari proceedings under the statute:

"The usual claim is made that the proceedings must have been attacked by certiorari. This question has been passed upon by this Court in *Clinton v Spencer* [250 Mich 135; 229 NW 609 (1930)];[19] *Fuller v Cockerill,* 257 Mich 35 [239 NW 293 (1932)];[20] and *Lake Twp v Millar* [257 Mich 135; 241 NW 237 (1932)].[21] I can add nothing to what was said in these cases upon the question of the necessity of resorting to certiorari. It is not necessary where there is no jurisdiction. It is the sole remedy if the drain commissioner has jurisdiction to correct any irregularities in the drain proceedings, and when the proceedings are set aside for irregulari-

---

[19] The Court held that the drain law did not authorize the building of a sewer.

[20] The Court conceded that if the issue raised by the plaintiffs "had to do merely with matters of irregularity relative to such proceeding the sole remedy under the statute would be by appeal in the nature of certiorari". Recognizing that "the sole remedy under the statute would be by appeal in the nature of certiorari", the Court granted equitable relief because the drain commissioner was "wholly without jurisdiction or authority" to construct a sewer drain in a village. Since he was without authority to lay a sewer drain, "the ultimate result of assessment of benefits and the collection from plaintiffs of the drain tax would be to deprive them of their property without due process of any sort". The Court reasoned that this lack of jurisdiction warranted relief in equity to prevent deprivation of a constitutional right.

[21] The Court enjoined construction of a sewer drain stating that the proceedings to establish a drain district were void. "The drain commissioner had no jurisdiction to construct a sewer any more than to construct a Covert road." The Court observed that "[t]he rule is that errors and irregularities in drain proceedings must be taken advantage of by certiorari, but an entire want of jurisdiction may be taken advantage of *at any time*". (Emphasis supplied.)

ties, they go back to the point at which they were regular and proceed from there. The court of equity had jurisdiction."

The allegations of plaintiffs' complaint make the instant case closely analogous to the sewer drain cases.[22] Plaintiffs allege that what purported to be an assessment for one purpose was actually an assessment for another and unauthorized purpose.

In *Forest Hill Cemetery Co v Ann Arbor*, 303 Mich 56; 5 NW2d 564 (1942), the Court enjoined collection of remaining installments of special assessments against exempt cemetery land although plaintiff had paid earlier installments without protest. The Court concluded that since plaintiff's land was about to be sold for the unpaid assessments, it faced irreparable injury justifying equitable relief from the illegal assessment.[23]

A complaint that the amount of a valid assessment has been improperly apportioned was not thought to put in question the authority of the drain commissioner to make the levy. The courts generally refrained from disturbing the apportion-

---

[22] See, *e.g., Clinton v Spencer*, 250 Mich 135; 229 NW 609 (1930); *Fuller v Cockerill*, 257 Mich 35; 239 NW 293 (1932); *Lake Twp v Millar*, 257 Mich 135; 241 NW 237 (1932); *Meyering Land Co v Spencer*, 273 Mich 703; 263 NW 777 (1935).

[23] An example of the principle that equity is not precluded from taking jurisdiction when the "exclusive" statutory remedy is inadequate is provided by the tax injunction act. MCL 211.114; MSA 7.168. Although the act flatly states that "[n]o injunction shall issue to stay proceedings for the assessment or collection of taxes under this act", the courts have interpreted this proscription as merely a codification of equity's irreparable injury rule.

The statute has thus been construed to mean "no injunction shall issue", *unless* the statutory remedy is inadequate. "[The tax injunction act] is not an absolute prohibition. Injunctions may be granted in case of 'irreparable injury', see *Manufacturers National Bank of Detroit v City of Detroit*, 285 Mich 273 [280 NW 760 (1938)], or 'unusual hardship', see *Sunday Lake Iron Co v City of Wakefield*, 323 Mich 497 [35 NW2d 470 (1949)]." *Haggerty v City of Dearborn*, 332 Mich 304, 316; 51 NW2d 290 (1952).

ment of benefits made by the assessing authority, whether under the Drain Code or other enabling legislation, as long as it appeared that the persons making the apportionment had not acted arbitrarily in light of the facts presented.[24] Where it appeared, however, that there was no factual basis for a determination of special benefit or of benefit derived, the courts granted equitable relief on the theory that a special assessment without evidence of special benefit or benefit derived constituted a deprivation of property without due process of law or that the assessing authority had acted arbitrarily or in bad faith.[25]

In one of its more recent pronouncements, *Blades v Genesee County Drain Dist No 2,* 375 Mich 683; 135 NW2d 420 (1965), this Court held that where the plaintiffs assert that their properties will receive no special benefit from a proposed drain and sewage disposal project,[26] the question, although one of fact, is not solely for the drain commissioner to decide, and that it can be reviewed judicially in equity although there had been a failure to bring certiorari proceedings. The Court declared that to deny plaintiffs an opportu-

[24] See, *e.g., Fuller v Cockerill, supra; Hudlemyer v Dickinson,* 143 Mich 250, 256; 106 NW 885 (1906); *Clinton Twp v Teachout,* 150 Mich 124, 128; 111 NW 1052 (1907); *Hinkley v Bishopp,* 152 Mich 256, 264; 114 NW 676 (1908); *Troost v Fellows,* 169 Mich 66, 70-71; 134 NW 1011 (1912).

The provisions of the 1963 Constitution may now require a broader scope of judicial review of the apportionment of benefits. See Const 1963, art 6, § 28. But that does not suggest that the Tax Tribunal was intended to have jurisdiction. The constitution does not require an independent, original, *de novo* determination. Review by the Tax Tribunal is not "direct review by the courts".

[25] See, *e.g., Blades v Genesee County Drain Dist No 2,* 375 Mich 683; 135 NW2d 420 (1965); *Fluckey v Plymouth,* 358 Mich 447; 100 NW2d 486 (1960).

[26] The sewage disposal system was apparently authorized pursuant to the County Public Improvement Act, MCL 46.171 *et seq.;* MSA 5.2767(1) *et seq.*

nity for a judicial hearing would be "no more nor less than a denial of constitutionally guaranteed due process".

The foregoing cases, decided under the Drain Code and its predecessors, illustrate that a statutory remedy may in a particular case be so inadequate as to justify equitable intervention. While the Drain Code provided for the appointment, by the probate court, of a board to review the drain commissioner's apportionment of benefits, it made the decision of the reviewing board final.[27] And while it provided for circuit court review, the scope of review in certiorari is generally restricted to irregularities appearing in the record. The statutory remedy provided by the drain law was inadequate in the foregoing cases because:

(1) there was no provision for judicial review of the apportionment of benefits, thus denying a remedy even in a case where the plaintiff could show that there was no support in the record for the apportionment and, accordingly, the absence of any benefit.

(2) in certiorari the issue is limited to whether the proceedings were regular, and the scope of the review did not extend to issues that would not appear on the record such as whether the improvement was a drain or a sewer. Equitable intervention was required to provide a remedy in meritorious cases left unprotected by the statutory remedy.

## C

The remedy under the Tax Tribunal Act is generally adequate. The scope of review, in contrast to certiorari, is broad and would cover all issues: irregularity, illegality, want of jurisdiction, denial of due process or other constitutional right.

[27] See, *e.g.,* MCL 280.157; MSA 11.1157.

The Tax Tribunal remedy is nevertheless inadequate in the instant case on account of several circumstances:

(i) a petition must be filed with the tribunal within 30 days; a diligent plaintiff could not have learned of the true nature of the assessment by examining the assessment roll or the subsequently mailed tax bill,[28]

(ii) the small amount involved for each taxpayer, $1 to $2 per year,

(iii) the large number of persons who are members of the class—over 60,000,[29]

(iv) the rules of the Tax Tribunal do not provide for the maintenance of class actions,[30] and

(v) the rules of the Tax Tribunal require the payment of a $50 filing fee by *each* property owner.[31]

To require each of the 60,000 members of the class to proceed separately, to hire their own counsel, to start their own proceeding and to pay $50 to obtain the refund of a few dollars, would leave them without adequate protection against such an unlawful exaction by a drain commissioner.

This is a case where, because of the size of the class, the relatively small amounts involved for each property owner, and the impediments to

---

[28] The plaintiffs allege that the members of the class received no notice of the reassessment before it was billed together with the *ad valorem* property tax, and no notice that the monies collected for maintenance and repair were being used to defray administrative expense and therefore they did not know that a drain assessment authorized for one purpose was actually being levied for another.

[29] The defendants say that the class plaintiffs Boller and Kraft seek to represent is composed of 60,036 property owners, and that Boller paid $2.77 and Kraft $1.82.

[30] *Calder v DeWitt Twp,* 1 MTTR 205 (1976).

[31] The tribunal is vested with the authority to set the fee. MCL 205.749; MSA 7.650(49). The $50 fee is prescribed in 1979 AC, R 205.1115.

maintaining an action before the administrative tribunal (assuming *arguendo* that the Tax Tribunal has jurisdiction), an equitable action can be maintained.

### D

The Drain Code's 30-day limitation on refund actions, like the 30-day limitation in the Tax Tribunal Act, makes the statutory remedy inadequate when the drain assessment was ostensibly for one purpose but actually for another. The cases previously discussed demonstrate that certiorari has not been regarded as an adequate remedy when the drain commissioner acts in excess of his authority. The plaintiffs, in the instant case, are not asserting that this drain assessment was improperly apportioned but rather that it was levied solely to defray the administrative expenses of the drain commissioner's office, that a drain commissioner is without authority to reassess for this purpose and therefore they were not subject to reassessment at all. Plaintiffs may accordingly seek equitable relief without regard to the procedural limitations of the Drain Code.

### E

Courts are established to provide a forum in which rights recognized by the law can be vindicated. A property owner has a right recognized by law not to be assessed except in accordance with the authority conferred by the statute under which the assessing body purports to act. When the established procedures are inadequate to vindicate a recognized right, equity will permit maintenance of the cause and fashion an appropriate remedy.

We are not saying that statutory limitations and

restrictions on the bringing of an action, and requirements that it be brought before an administrative tribunal, can be avoided by bringing it as a class action in equity. Nor are we suggesting that equity should intervene and provide a remedy whenever there is a commonality of issues or mutuality of interest on the part of plaintiffs. We are saying, rather, that in an appropriate case, where the circumstances make the administrative remedy inadequate, a class action can be maintained.[32]

[32] Equity has often assumed jurisdiction to avoid a multiplicity of suits. One of equity's innovations was that it could join all interested parties in a single action, and with one decree dispose of the entire controversy. It is established that equity jurisdiction may be invoked to contest an assertedly illegal tax:

"In all these cases each separate land-owner had, of course, some kind of legal remedy, either by action for damages against the officer enforcing the unlawful collection, or by writ of certiorari to review the assessment itself. But such remedy was inadequate when compared with the comprehensive and complete relief furnished by the single decree in equity.

"The jurisdiction has been carried much further. In a large number of the states the rule has been settled in well-considered and often-repeated adjudications by courts of the highest character for ability and learning, that a suit in equity will be sustained when brought by any number of taxpayers joined as co-plaintiffs, or by one or more plaintiffs suing on behalf of all taxpayers similarly situated, or sometimes even by a single taxpayer suing on his own account, to enjoin the enforcement and collection, and to set aside and annul, any and every kind of tax or assessment laid by governmental authorities * * *. In the face of every sort of objection urged against a judicial interference with the governmental and executive function of taxation, these courts have uniformly held that the legal remedy of the individual taxpayer against an illegal tax, either by action for damages, or perhaps by certiorari, was wholly inadequate; and that to restrict him to such imperfect remedy would, in most instances, be a substantial denial of justice, which conclusion is, in my opinion, unquestionably true. The courts have therefore sustained these equitable suits, and have granted the relief, and have uniformly placed their decision upon the inherent jurisdiction of equity to interfere for the prevention of a multiplicity of suits. The result has demonstrated the fact that complete and final relief may be given to an entire community by means of one judicial decree, which would otherwise require an indefinite amount of separate litigation by individuals, even if it were attainable by any means." 1 Pomeroy, Equity Jurisprudence (5th ed), § 260, pp 527-534.

It has been observed:

Nor are we saying that plaintiffs' noncompliance with statutory time limitations should be ignored in deciding whether to grant equitable relief. In the instant case, however, the defendants had apparently been advised by the Attorney General in 1974—[33]before the drain assessments now in suit were levied—that § 196 of the Drain Code did not authorize reassessment to provide funds for payment of administrative expense. It does not appear that the defendants have been prejudiced by the delay in commencing this action or that the plaintiffs should be barred by the doctrine of laches.[34]

Nor do we wish to be understood as saying that plaintiffs can avoid statutory procedures by merely characterizing the defendants' conduct as illegal, fraudulent or constructively fraudulent.[35] We are

"The class action certainly is not a solution to all things. But in some areas, at least, it is a breath of hope—a chance to cope. It gives scattered individuals with a common problem an instrument to try and deal with their problem. It has been particularly helpful for one of today's most beleaguered and disaffected groups—the consumer. It is a kind of better slingshot for the modern David to tackle Goliath with." *Paley v Coca Cola Co,* 389 Mich 583, 595; 209 NW2d 232 (1973) (WILLIAMS, J.).

[33] See fn 3.

[34] Equity will regard the statute of limitations on a parallel legal action as a guide in applying its own doctrine of laches, but the statute of limitations is not absolute in equity:

"The courts frequently refuse relief where it appears that the complainant, before seeking the aid of equity, permitted the lapse of a period comparable to the one appearing in the statute of limitations. Under ordinary circumstances a suit in equity will not be stayed for laches before the time fixed by the analogous statute of limitations, and the court will run very nearly, if not quite up to, the measure of the statute, but, if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the court will determine the extraordinary case in accordance with the equities which condition it." 2 Pomeroy, Equity Jurisprudence (5th ed), § 419a, pp 173-174.

A court of equity may deny relief because of laches where the plaintiff failed to exercise reasonable diligence. See 2 Pomeroy, Equity Jurisprudence (5th ed), §§ 418-419.

[35] "By constructive frauds are meant such acts or contracts as,

saying rather, in accord with a long line of Michigan authority, that where no assessment or tax whatsoever is authorized, a court of equity will generally grant relief against such an exaction on the ground that the levy was illegal. In so doing, it may characterize the action of the assessing officer or body in *acting in excess of his or its authority* as constructively fraudulent.[36]

## IV

The courts have generally refrained from ordering refunds of drain assessments found to have been illegally imposed absent compliance with the statutory procedure. The apparent reason is that drain assessment collections are generally paid over promptly to the holders of bonds floated to pay for the improvement. It has not been thought appropriate to require the drain commissioner or the county or its treasurer to reimburse a plaintiff, who in some instances might possibly have proceeded more promptly, out of general tax funds collected from other property owners. The relief granted has been limited to enjoining the collection of unpaid installments.[37]

In the instant case, however, there need be no concern about an inappropriate imposition on

although not originating in any actual evil design or contrivance to perpetuate *[sic]* a positive fraud or injury upon other persons, are yet, by their tendency to deceive or mislead other persons, or to violate private or public confidence, or to impair or injure the public interests, deemed equally reprehensible with positive fraud, and therefore are prohibited by law as within the same reason and mischief as acts and contracts done malo animo." 1 Story, Equity Jurisprudence (14th ed, 1918), § 368, p 349.

[36] See, *e.g., Clinton v Spencer, supra,* 151. *Blades v Genesee County Drain Comm'r, supra,* 694.

[37] See *Norton Twp v Cockerill,* 265 Mich 405; 251 NW 543 (1933), and *Brooks v Oakland County,* 268 Mich 637; 256 NW 576 (1934).

property owners generally. Plaintiffs will be able to recover all or substantially all the amounts they seek out of the escrowed funds without appropriation of general tax funds. Moreover, if the drain commissioner did act in excess of his authority in levying an assessment for the administrative expenses of his office and the burden of paying the expense is imposed by law on the defendant board of commissioners, the board then might have the obligation to appropriate funds to pay such expense. If that be the case, the use of general tax funds to make a refund might well be appropriate.

A court of equity will ordinarily retain jurisdiction to grant complete relief.[38] It will not merely enjoin future misconduct but will enter a judgment for damages caused by past misconduct. In fashioning a decree, the court will consider the rights of third parties, especially those who may also be innocent of wrongdoing. In the instant case, in contrast with the cases where this Court declined to order a refund, the rights of third parties do not intervene. No person innocent of wrongdoing would be harmed by ordering a refund of escrowed funds or, indeed, if it is determined that the Wayne County Board of Commissioners should have appropriated funds to pay administrative expenses, by ordering a refund payable out of general tax funds.

The Drain Code does, indeed, require payment under protest and suit within 30 days. Those procedural provisions are designed to protect the treasurer, who at one time was personally liable to refund amounts unlawfully collected, so that he will know whether to withhold payment from

---

[38] 1 Pomeroy, Equity Jurisprudence (5th ed), § 231.

bondholders or others to whom the money is allotted. Those procedural limitations are valid only insofar as they do not deny procedural due process; they do not preclude a court of equity from providing an adequate remedy in an appropriate case.

Procedural due process may well be offended by a limitation which requires a property owner to inform himself of and to protest illegality which does not appear on the face of public records readily available or statements mailed to him. Substantial penalties are imposed for late payment of an *ad valorem* property tax bill. It is unrealistic to expect a taxpayer to withhold payment of a bill for, say, $750 while he investigates an apparently bona fide $2 charge.[39]

There is no need to rest decision in constitutional terms. A court of equity is empowered to override a procedural limitation which renders a statutory remedy inadequate at least where, as here, noncompliance is in the circumstances justified and neither the defendants nor third parties would be prejudiced by the Court's failure to enforce the limitation.

## V

The city and township treasurers are go-betweens in the system of drain assessments. The drain commissioner levies the drain assessment upon the property owner; the city or township treasurer collects the assessment and pays it over to the county treasurer. The city and township

---

[39] Because the amount reassessed per taxpayer is relatively small, apparently $2 to $3 per homeowner, and it is billed together with the *ad valorem* property tax, the levy would generally be paid as a matter of course when the *ad valorem* tax is paid.

treasurers insist that it would be a breach of their public trust and duty for them to deliver the disputed drain revenues which they have collected to the Wayne County Treasurer.

The defendants' contention that the city and township treasurers do not have standing should be appraised alongside their contention that Boller and Kraft cannot maintain this action as a class action. Defendants contend, in effect, that the wrong asserted in the complaint cannot be effectually presented for adjudication. The judicial system is not so bereft that it cannot provide an effectual means of protecting and fully vindicating a right recognized by the law.

If, as we would hold, Boller and Kraft can maintain a class action, it becomes less important whether the city and township treasurers should be retained as parties plaintiff.[40]

---

[40] The city and township treasurers perform a purely ministerial function under the Drain Code, collecting the amounts assessed by the drain commissioner and paying the money over to the county treasurer. See MCL 280.264-280.265; MSA 11.1264-11.1265; *Hillyer v Jonesfield Twp,* 114 Mich 644; 72 NW 619 (1897); *Taylor v Avon Twp,* 73 Mich 604; 41 NW 703 (1889). They would not be liable on their bonds for paying the money over to the county treasurer, because they would simply be performing their statutory duty.

Nevertheless, if it were to be decided that this action cannot be maintained as a class action, then the Court would be obliged to consider whether a city or township treasurer is required to pay over money which he, in good faith, believes has been unlawfully exacted from the citizenry or whether he may, as they in effect did, petition a court for instructions.

Cases holding that a city or township treasurer may not interpose his judgment regarding the lawfulness of a drain or special assessment or has no right or duty to do more than collect and pay over or that he is obliged to pay over the money to the county treasurer when collected, do not necessarily preclude seeking instructions where there is a substantial issue regarding the lawfulness of the assessment.

The cases recognizing that a public official has standing "commensurate with his public trust and duties" are readily distinguishable from this case:

In *Mayor of Dearborn v Dearborn Retirement Board,* 315 Mich 18;

We would affirm the Court of Appeals and remand for trial.

Kavanagh, J., concurred with Levin, J.

23 NW2d 186 (1946), the city council overrode the mayor's veto of a budget appropriation, and the mayor sought a declaratory judgment as to the validity of the appropriation. This Court held the mayor had standing commensurate with his public trust and duties. But the mayor's public trust and duties in that case included supervisory control over the budget: he held a veto power over budget items and, as the administrative head of the city, was directly responsible for administering the budget. The Court was thus holding that, while no statute gave the mayor standing to question the legality of budget appropriations, he was the proper officer to do so.

*Auditor General v Lake George & M R R Co,* 82 Mich 426; 46 NW 730 (1890), involved a technical error in the complaint. When a railroad would not pay its taxes, the auditor general was required by the statute to ask the attorney general to sue for collection. The complaint in that case was filed by the "Auditor General, by direction of [the] Attorney General". The Court held that the complaint was valid, and then added that the auditor general had standing commensurate with his public trust and duties.

In *Berrien County Treasurer v Bunbury,* 45 Mich 79, 84; 7 NW 704 (1881), the township treasurer had defaulted on his bond to ensure the proper collection and disbursement of tax revenues. Although the statute did not give anyone the authority to sue to collect on the bond, the Court held that the county treasurer, who was named as obligee on the bond, must have standing because it was commensurate with his public trust and duties.

We note, however, that in this case the only public officers in a position to notice the asserted wrong and complain about it are the city and township treasurers. The drain commissioner and the county treasurer are charged with the wrong. Individual property owners have an insufficient interest to monitor the use of drain assessments, and are not familiar with governmental finances. City and township treasurers are in a position to observe what happens to the monies that they collect.

Moreover, it cannot be true that the city and township treasurers have a duty to pay the monies over to the county treasurer although they know that such monies will be applied in an unauthorized manner. In *Cheboygan County Board of Supervisors v Mentor Twp Supervisor,* 94 Mich 386; 54 NW 169 (1892), this Court held that mandamus would not issue to compel a local officer to perform his statutory duty, when the mandamus would further an illegal purpose.